472 A.2d 1001

**Charles G. GRAVENSTINE**

v.

**Brigitte E. GRAVENSTINE.**

**No. 1080, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

March 14, 1984.

162

Joseph D. Gallagher, Rockville, and W. Eugene Smallwood, Ashton, with whom were Gill & Sippel, Rockville, on the brief, for appellant.

Rachel F. Papkin, Bethesda, for appellee.

Argued Before WILNER, GARRITY and ALPERT, JJ.

ALPERT, Judge.

Over 200 years ago Benjamin Franklin observed that "[w]here there's marriage without love, there will be love without marriage."[1] Having experienced the former, appellant sought and temporarily found the latter. The affair begat divorce. Divorce begat a squabble over "marital property." Resolution of the squabble begat this appeal.

### The Facts

This childless marriage commenced on December 28, 1973. Charles Gravenstine, appellant, is a minister employed by a District of Columbia university as a supervisor of pastoral ministry. He also conducts an independent practice as a marriage counselor. The chancellor determined that:

> [Appellee] earns $22,000.00 per year; [Appellant], in addition to his $12,600 salary, has an untaxed housing allowance of $8,015.00, a lucrative (and unreported) marriage counselling practice, and substantial interest and dividend income.

Brigitte Gravenstine, appellee, is a legal secretary.

Both parties were monetary contributors to the marriage, both having been employed throughout the marriage. Appellee was the major nonmonetary contributor, as she performed most of the household chores, although appellant was responsible for the gardening and banking. Their funds were pooled, carefully budgeted and they lived frugally. For example, appellee canned vegetables grown by the par-

---

1. *The Autobiography and Other Writings of Benjamin Franklin,* (New York Dodd, Mead & Co. 1963) at 203.

ties, and made most of her own clothes and the appellant's underwear. Due to their parsimonious lifestyle, the parties were able to accumulate a significant amount of property including bank accounts, securities, a home and vehicles, and could afford to reinvest the dividends from the stocks owned by the appellant. Of all the property, only a home, a 1978 Volkswagen Rabbit and a credit union account were titled in joint names as of the time of trial. All other property was titled solely in the name of the appellant.

For the first six years of their marriage the parties pooled their earnings, enabling the appellant to make substantial deposits of his other income plus portions of appellee's salary into the husband's savings account at Madison National Bank, a joint savings account at Chevy Chase Savings and Loan, and the credit union at Catholic University. In 1979 the parties separated their funds and thereafter each paid for his or her personal expenses and his or her share of the household expenses and the mortgage.

In June of 1981 the parties separated on what appellee believed to be a temporary basis. She testified that the parties agreed that she should leave the marital home and find an apartment because appellant had a dog and he was better able to maintain the parties' garden. Appellant subsequently asked appellee for her one-half share of the mortgage payment. When she responded that she could not afford to pay rent and at the same time continue to pay her share of the mortgage payment, appellant agreed that he would assume full responsibility for the mortgage.

In the summer of 1981 the parties divided three certificates of deposit and the funds in their joint savings account at Chevy Chase Savings and Loan. At trial appellee contended and proved the existence of other bank accounts containing funds which would later be determined to be marital property.

In the fall of 1981 appellee's attempts at reconciliation were thwarted in that appellant continued having sexual relations with another woman; this relationship precipitated

what we perceive to be the straw that broke the camel's back.

In the early morning hours of January 10, 1982, appellee decided to visit the marital home, only to find appellant in the marital bed with his paramour. This event apparently triggered the divorce proceedings, as appellant filed her Bill of Complaint on February 8, 1982, in the Circuit Court for Montgomery County, seeking divorce *a vinculo matrimonii* and a division of property.

The acrimony which characterized the litigation that followed was exemplified in the hypersensitive discovery proceedings. See discussion of Cross-Appeal *infra*.

### Proceedings

After two difficult days of trial which reflected the animosity that had built up over the past two years, the chancellor awarded the appellee a divorce *a vinculo matrimonii* on the grounds of adultery, a monetary award in the amount of $52,302.00 and a contribution for costs and attorney's fees from appellant in the amount of $2,500. The chancellor denied appellant's request for contribution towards mortgage and maintenance payments made by appellant on the parties' former marital home. The granting of the divorce is not an issue in this appeal; the parties continue to disagree only over the marital award and denial of appellant's request for contribution towards the mortgage and maintenance expenses on the parties' former marital home.

Appellant contends that the chancellor erred in:

I. Concluding that the portion of appellant's pension earned prior to marriage was marital property.

II. Concluding that certain real estate acquired by appellant before the marriage was marital property.

III. Valuing the New Jersey real estate.

IV. Holding that all of the securities acquired during the marriage were marital property.

V. Valuing the securities.

VI. Determining that ten thousand dollars in cash (and interest thereon) disbursed three years prior to the divorce was marital property.

VII. Valuing appellant's truck.

VIII. Determining that appellant was not entitled to contribution from appellee for the carrying charges and maintenance expenses of jointly owned property.

In her cross-appeal, appellee contends that the chancellor's award of costs and attorney's fees was insufficient.

## I. *The Pension*

Appellant contends that only a portion of appellant's pension should have been considered marital property and that the court erred in determining that the full value of the pension constituted marital property and was thus subject to equitable distribution. At trial when the issue of valuation of the marital portion of the pension arose, a dispute ensued over appellee's right to call her expert witness. Rather than have the issue of marital property referred to a special master for later determination, the parties stipulated to the "total value" of the pension in the amount of $30,948.00. Before determining the amount of the monetary award, the chancellor, while analyzing the facts to determine which property was marital, stated:

[Appellant's] pension with the Lutheran Church in America has a present value of $30,948.00. [Appellee's] testimony that she followed [appellant] from city to city as he furthered his career with the Lutheran Church was uncontradicted. Although [appellee] worked as a secretary in a number of different places throughout the marriage, she had not, until very recently, worked in any one place long enough to acquire any retirement rights at all. Clearly, [appellee] is entitled to one-half the value of [appellant's] pension.

Although it was undisputed that appellant's pension rights began to accrue (prior to the marriage) in 1968, the chancellor did not consider what if any portion of the pension might be nonmarital property.

Section 3–6A–05 of Maryland's Marital Property Act contemplates that a chancellor engage in a three-step analysis when equitably distributing marital property. First, the chancellor must categorize the property owned by the parties as marital or non-marital. Next, the value of the marital property must be determined. Finally, the chancellor by means of a monetary award based on the value of that property, makes an equitable distribution of it between the spouses. *Harper v. Harper,* 294 Md. 54, 79, 448 A.2d 916 (1982).

A spouse's pension rights, to the extent accumulated during the marriage, constitute "marital property" subject to consideration by the chancellor unless otherwise prohibited by statute. *Deering v. Deering,* 292 Md. 115, 437 A.2d 883 (1981). Where property is purchased and paid for in part before marriage and in part during marriage with nonmarital and marital funds, the property is nonmarital in part and marital in part. *Harper v. Harper, supra,* 294 Md. at 81, 448 A.2d 916.

In *Harper, supra,* the husband had purchased and partly paid for certain real property before the marriage. The marital residence was constructed on that property after the marriage by the expenditure of both nonmarital and marital funds. Marital property is defined as:

> All property, however titled, acquired by either or both spouses during their marriage. It does not include property acquired prior to the marriage, property acquired by inheritance or gift from a third party, or property excluded by valid agreement or property directly traceable to any of these sources.

Md.Cts. & Jud.Proc.Code Ann. Section 3–6A–01(e) (1980 Repl.Vol., 1983 Cum.Supp.).

The Court of Appeals in its analysis rejected the "inception of title theory" and "transmutation of property theory" in favor of the "source of funds theory":

We conclude that under the Maryland Act the appropriate analysis to be applied is the source of funds theory. Under that theory, when property is acquired by an expenditure of both nonmarital and marital property, the property is characterized as part nonmarital and part marital. Thus, a spouse contributing nonmarital property is entitled to an interest in the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property. The remaining property is characterized as marital property and its value is subject to equitable distribution. Thus, the spouse who contributed nonmarital funds, and the marital unit that contributed marital funds each receive a proportionate and fair return on their investment.

*Harper,* 294 Md. at 80, 448 A.2d 916. The Court went on to recognize that in order to apply the source of funds theory in Maryland it is necessary to define the term "acquired" appearing in § 3–6A–01(e) as "the ongoing process of making payment for property." *Id.*

It is uncontroverted that payments made toward the pension by appellant prior to the marriage were nonmarital contributions and thus constitute nonmarital property. On the other hand, that portion of appellant's pension that accrued after the date of marriage having been paid for by marital contributions was "acquired during the marriage" and thus was clearly marital property. *Harper* makes clear that the chancellor must determine the total nonmarital and marital investment as only the marital property is subject to equitable distribution.

Rather than arguing the merits of the chancellor's decision, appellee asserts that appellant's present position is inconsistent with his position at trial and, therefore, he is precluded from obtaining appellate review on this issue.

Although appellant did indeed attempt to exclude evidence to be elicited from appellee's expert, he did make an attempt to stipulate to that expert's evaluation of the marital portion of the pension, as illustrated by the following colloquy:

[APPELLANT'S COUNSEL]: Before we proceed, Your Honor, I think there's a lot of confusion in the file about the defendant's pension. We are willing to stipulate that the report which [Appellee's counsel] tried to introduce yesterday, that part of that is marital and part of it isn't marital; we've never contended otherwise, and we're willing to stipulate that $9,000—not 9,000, but $18,000 of the pension is marital property. Now, we're not willing to stipulate that she has a right to that, but I think it would save a lot of testimony on the part of—since there seems to be no dispute as to that; it came from [Appellee's counsel], we would be willing to stipulate to that, and I assume she would be willing to so stipulate.

[APPELLEE'S COUNSEL]: Your Honor, we offered the letter from the actuary in evidence; it was not moved in; you took a value; I would like to stand by that value. We've tried to stipulate, threw out the pension; we got nowhere. I think this is after the fact and I object to it, and I'd like to request the Court to stand by its value of yesterday.

THE COURT: All right. You may proceed.

[APPELLEE'S COUNSEL]: If that's the case, Your Honor, then we would move to withdraw our stipulation of yesterday as to the total value, because it presents a distorted picture. The total value—he was employed six years before he married her.

THE COURT: I understand that.

[APPELLANT'S COUNSEL]: And I don't think Your Honor can have any way to determine what is the marital portion and what isn't without some stipulation or some evidence on our part, and we don't have any expert.

THE COURT: All right. You may proceed.

As there was no specific proof of the value of the marital portion, the case must be remanded to the trial court to determine first the value of the marital portion of the pension and then to make an equitable distribution of the newly established value of that marital property, with due regard being given to all the relevant factors.

## II. *The New Jersey Real Estate*

In 1972, prior to marriage, appellant purchased an unimproved lot in Cape May County, New Jersey. The parcel was purchased with $5,100 of appellant's funds and was titled in his name. While the parties discussed building a house on this property, the parcel was used only as a garden. Both parties apparently enjoyed visiting the New Jersey land on summer weekends. Appellee testified that she helped to mow the grass, maintain the garden and assist in the picking, cooking, and canning of vegetables grown on the land. During the course of the marriage, taxes amounting to $1856.08 were paid from joint funds. Evidently applying the *Harper* ratio discussed *supra,* the chancellor declared that "the property is marital in the ratio of taxes paid during the marriage [$1856.08] to the total investment in the property [$5100]."

Appellant posits that the property was fully "acquired prior to marriage" and thus nonmarital property. Section 3–6A–01(e), *supra.* He further asserts that "in no sense was the property . . . 'purchased and paid for' either in whole or in part during the marriage." Appellee replies that the New Jersey land was "part marital property" since she contributed to the payment of taxes.

Resolution of this issue requires scrutiny of the word "acquired" as used in Section 3–6A–01(e). As previously explained, the Court of Appeals has defined the term as "the on-going process of making payment for property." *Harper, supra* at 80, 448 A.2d 916. We hold under the facts of this case that the payment of taxes is not a part of the on-going process of paying for property fully purchased prior to the marriage. Property tax is the "charge on the *owner* of a

property by reason of his ownership alone without regard to any use that might be made of it." *Weaver v. Prince George's Co.,* 281 Md. 349, 357, 379 A.2d 399 (1977) (emphasis added) (and cases cited therein). "A tax on the mere right to *own* or have property is a property tax." *Id.* (emphasis added). Simply stated, payment of property tax does not involve the acquisition of land. We do not believe that the legislature intended that the joint payment of a tax incident to ownership of property would change the characterization of nonmarital to marital property. This holding, however, does not leave appellee without a remedy for her joint payment of the property tax. Section 3–6A–05(b)(9) allows the chancellor the flexibility to consider this payment when arriving at a monetary award. This provision sufficiently protects appellee's payments in behalf of property manifestly nonmarital.

On remand, we direct the chancellor to characterize the New Jersey property as nonmarital property and to consider appellee's joint payment of the property taxes when computing a fair and equitable monetary award.

### III.  *Valuing of New Jersey Property*

■  Ordinarily, because we have concluded that the New Jersey parcel was not marital property, we would not address the issue of proof of its value. On remand, however, the chancellor in adjusting the amount of the monetary award would have to consider "the value of *all* property interests of each spouse." Section 3–6A–05(b)(2) (emphasis supplied).

Appellant argues that the chancellor incorrectly relied on New Jersey tax assessment records to assign a value to the property. We agree.

The general rule is that the value of property cannot be proven by assessments made for tax purposes. *See, Mayor and City Council of Baltimore v. Himmel,* 135 Md. 65, 75–76, 107 A. 522 (1919) (tax assessment inadmissible to show value

in condemnation proceedings). *See also* cases collected at 39 A.L.R.2d 209, 214–20 (1955) (and Later Case Service).

On remand we suggest that the parties present the testimony of a real estate dealer or appraiser or any other person engaged in this business who possesses special knowledge in this area to assist the chancellor in valuing the property in question. *Preske v. Carroll,* 178 Md. 543, 552, 16 A.2d 291 (1940).

## IV. *Securities*

Prior to marriage, appellant purchased 50 shares of Gulf Oil stock, 174 shares of Enterprise Fund, 75 shares of Atlantic City Electric, and 212 shares of Putnam Growth Fund. At trial appellant testified that the parties now possessed 75 shares of Gulf Oil, 314 shares of Enterprise Fund, 300 shares of Atlantic City Electric, and 428 shares of the Putnam Growth Fund. All shares are titled in appellant's name. The additional shares were acquired while the parties were married through the addition of marital cash and dividend reinvestments.

Appellee testified that the parties both decided to reinvest the stock dividends. Income tax generated from these dividends were paid from marital funds. Appellee further testified that the reason the dividends were reinvested was because the parties' financial arrangement obviated the need for the dividend money.

The chancellor ruled that the securities acquired during the course of the marriage were marital property and that appellant held an interest in fifty percent of that marital portion. Appellant points out that the stocks were originally purchased before marriage and were consequently nonmarital property. § 3–6A–01(e), *supra.* Thus, he posits, the dividends generated from those stocks should also be considered nonmarital because they are directly traceable from nonmarital property. Appellee responds that the stocks acquired during marriage were marital property because "but for her monetary contribution to the family's finances,

the parties would have needed the dividends for other purposes."

Applying the "source of the funds" theory articulated by the Court of Appeals in *Harper, supra,* we make the following observations. The chancellor correctly determined that the securities purchased before marriage were nonmarital property. The chancellor also correctly found that the securities acquired during the marriage are marital property. The evidence adduced demonstrated that the marital unit was able to purchase the additional securities due to appellee's contribution to the marriage's finances. Hence, shares purchased during the marriage were marital property and appellee was entitled to a "proportionate and fair" return on her investment. *Id.* 294 Md. at 80, 448 A.2d 916.

Moreover, we are unable to agree with appellant that the new stocks are traceable from nonmarital property. Section 3–6A–01(e) states that property traceable from property acquired prior to marriage is not marital property. Like the chancellor, we analogize this case to *Brodak v. Brodak,* 294 Md. 10, 447 A.2d 847 (1982). There, a husband received a trailer park as a gift and later purchased new trailers with income generated from the trailer park's business. Property acquired as a gift does not constitute marital property. Section 3–6A–01(e), *supra.* The chancellor in that case determined that the wife's nonmonetary contribution of bookkeeping and housekeeping chores had generated income through which the spouses could afford the new trailers. Consequently, the chancellor concluded that the new trailers were marital property. The Court of Appeals agreed, holding that in light of the chancellor's finding, the trailers were no longer traceable to the nonmarital gift of the trailer park.

In the case *sub judice,* the evidence showed that appellant could afford to purchase new shares and reinvest the dividends only because of appellee's marital contributions. Since the new securities were purchased with marital funds supplied in part from money earned by appellee, the new

shares were no longer traceable to nonmarital funds origi-
nally expended by appellant.

### V.  *Valuing of Securities*

■  Appellant also complains that the chancellor errone-
ously calculated the value of the securities.  When appellee
began to testify as to value on the basis of stock market
quotations from the *Washington Post,* appellant objected,
and the court offered to find its own values.  The chancellor
apparently relied on an addendum to appellee's trial brief
filed before trial and to appellee's proposed finding of facts
submitted after trial.  As the chancellor should not have
proceeded on his own post-trial factfinding mission, we
reverse his finding as to the value of the securities and
remand.

■  Appellee's source for the values was the February 11,
1983 edition of the *Washington Post.*  More than 70 years
ago in a time far distant in technological knowledge, the
Court of Appeals held that newspaper reports of stock
market quotations are admissible in evidence only when it is
shown that the newspaper offered into evidence is accepted
by the trade as "trustworthy and reliable."  *Jones v. Ortel,*
114 Md. 205, 211, 78 A. 1030 (1910).  Although no foundation
was made in this case, considering the scientific sophistica-
tion that has evolved over the past seven decades in the
gathering of financial information and verification of stock
prices, a court could take judicial notice that the stock
market reports of certain newspapers or trade journals are
"trustworthy and reliable."

■  We point out, however, that the burden rests upon
the proponent of the value of the stock to produce evidence
of a source's competence in the event that the trial court did
not take judicial notice of a particular newspaper or trade
journal.

We trust that upon remand the parties will present suffi-
cient and competent evidence to substantiate the value of

these securities as of the date of divorce, *perhaps even by way of stipulation.*

VI. *Reimbursement of the $10,000 Withdrawn From The Joint Account*

Appellant argues that the chancellor erred in determining that $10,000 in cash and interest thereon withdrawn by appellant from the joint credit union account was marital property. First, we observe that it is not clear that the chancellor did indeed determine that the $10,000 withdrawn from the credit union account was marital property. In stating his basis for determining the monetary award, the court, *inter alia,* made the following findings of fact:

> Both parties testified that joint funds were deposited with the credit union at Catholic University. At the present time, there is a balance of $377, and [appellee] is entitled to one-half of this amount, $188.50. On cross-examination [appellant] admitted that he withdrew $10,000 from the credit union account on January 23, 1980, without [appellee's] knowledge or consent. [Appellant] was unable to remember what he did with that money although he testified that it did not go into any certificate of deposit or his statement account at Chevy Chase Savings and Loan. [Appellee] is entitled to one-half this amount ($5,000) plus three years interest thereon, or $6,500.

There was substantial evidence to support those facts as determined by the chancellor and he was not clearly erroneous in that regard. Maryland Rule 1086. Although we hold for reasons later explained that he was correct in awarding one-half of the amount withdrawn to appellee, it was error to do so on the legal basis that the $10,000 constituted marital property. Since it appears that the chancellor was explaining his reasons for the monetary award and since the monetary award can only be predicated upon a prior determination of marital property, it does indeed appear that the chancellor determined that the $10,000 was marital property. The applicable statute, Md.Cts. & Jud.Proc.Code Ann.

§ 3–6A–05 permits a court to distribute assets acquired during marriage through a monetary award. More specifically it provides:

> (a)(1) In granting an absolute divorce or annulment the court shall determine which property is marital property . . . if division of the property is an issue. . . .

It is our view that the marital property which generates a monetary award must ordinarily exist as "marital property" as of the date of the final decree of divorce based on evidence adduced at the trial on the merits or a continuation thereof. Therefore, property disposed of before commencement of the trial under most circumstances cannot be marital property.[2] Although "marital property" is defined as "all property, however titled, acquired by either or both spouses during their marriage . . .," the legislative scheme of the 1978 Marital Property Act contemplates determination of marital property at the time the marriage is dissolved,[3] *i.e.*, when the absolute divorce is granted. *Dobbyn v. Dobbyn,* 57 Md.App. 662, 471 A.2d 1068 (1984). After the court determines which property is marital property, it must then proceed to determine the value of *all* marital property.

In many cases it would be physically impossible to value *all* property (including property disposed of over possibly a 10, 20 or 30 year period from marriage to the granting of an absolute divorce), however titled, acquired by either or both spouses during their marriage. The legislature would not engage in such an absurdity. Statutes are to be construed reasonably and with reference to the purpose to be

---

**2.** We do not address the potential problem of dispositions of property made to avoid the consequences of § 3–6A–05 as that issue is not before us.

**3.** The preamble to 1978 Md.Laws Ch. 794 provides in pertinent part: "The General Assembly declared further that it is the policy of this State that *when a marriage is dissolved* the property interest of the spouses should be adjusted fairly and equitably. . . ." (Emphasis supplied).

accomplished; results that are unreasonable, illogical, or inconsistent with common sense should be avoided. *E.g., Cider Barrel Mobile Home Court v. Eader,* 287 Md. 571, 583, 414 A.2d 1246 (1980); *Nooe v. Mayor and City Council of Baltimore,* 28 Md.App. 348, 355, 345 A.2d 134 (1975). Statutes are not to be interpreted so as to lead to absurd consequences, *e.g., Blocher v. Harlow,* 268 Md. 571, 584, 303 A.2d 395 (1973); *Farber's Inc. v. Comptroller of the Treasury,* 266 Md. 44, 51, 291 A.2d 658 (1972), as it cannot be presumed that the legislature would do a futile thing. 2A Sutherland, *Statutes and Statutory Construction* § 45.12 at 37 (4th ed. 1972).

█ As we stated in *Ward v. Ward,* 52 Md.App. 336, 339–40, 449 A.2d 443 (1982):

Section 3–6A–05 may not be applicable in every or even most divorce cases. What triggers operation of the statute is the claim that a *division* of the parties' property according to its title would create an inequity which could be overcome through a monetary award. Further, the initial determination of what constitutes marital property does *not* depend upon any consideration of the nine factors in § 3–6A–05(b).

(Emphasis in original.)

█ It is only when an equitable adjustment over and above the distribution of the spouse's property in accordance *with its title* is an issue, that the court must determine which property is marital property. Thus, some form of title must be vested in one spouse or the other at the time of the trial (or continuation thereof) which results in the *dissolution of the marriage.*

█ As the $10,000 was not traced to any property possessed by either spouse at the time of the divorce, and since it was undisputed that the funds were withdrawn more than 3 years before the absolute divorce was granted, the basis of the monetary award was property that no longer was "marital property" at the time of the dissolution of the marriage. Such an award is not authorized under § 3–6A–05.

■ Returning to our reasons for affirming the chancellor's decision awarding the appellee one-half of the $10,000, we find that our decision in *Sody v. Sody,* 32 Md.App. 644, 363 A.2d 568 (1976) is controlling.  In *Sody* we said:

Indeed, the chancellor found sufficient evidence to hold that the intention of the parties was to use the account for their mutual benefit, and concluded that all of the expenditures made by Mrs. Sody, after the new account was established, were proper expenditures, beneficial to Mr. and Mrs. Sody and their children.

In further holding, however, that upon dissolution of the marriage she was entitled to the balance, we think that under the guidelines of *Jones* [*v. Hamilton*] [211 Md. 371, 127 A.2d 519 (1956)], the court was clearly erroneous. We think it obvious that the parties mutually intended the funds to be used for family purposes, and that once the marriage was dissolved, they became tenants in common of the joint account and the husband was entitled to a one-half interest in the balance of the account.

*Id.* at 654–55, 363 A.2d 568.

Even if the chancellor was right for the wrong reason in awarding the $5,000 plus interest to appellant, he was still right.  *Aerospeca Ltd. v. Butler Aviation International, Inc.,* 44 Md.App. 610, 624, 411 A.2d 1055 (1980).

■ With respect to the award of interest at an approximate rate of 10% per annum, under the circumstances the court exercised its discretion properly.  The allowance or refusal of interest in equity generally rests in the sound discretion of the court.  *Carrington v. Thomas C. Basshor Co.,* 119 Md. 378, 382, 86 A. 1030 (1913);  *see also* 25 C.J.S. *Damages* § 54.  As the chancellor was presumptively aware that the rate of interest on judgments was 10% per annum, Md.Cts. & Jud.Proc.Code Ann. § 11–107(a) (1980 Repl.Vol., 1983 Cum.Supp.), he did not abuse his discretion in awarding interest at a rate that did not exceed that permitted on a judgment.

## VII. *Truck*

■ In September 1981 while the parties were separated but still married appellant purchased a Datsun King Cab for $7700.[4] The vehicle was titled to appellant. At trial appellant stated he had paid $1700 as a down payment and financed the remaining $6000. He further stated that he had paid one half of the installments due on the debt. The chancellor found that the truck constituted marital property and assigned the full purchase price as the value of the vehicle.

Appellant does not quibble with the categorization of the truck as marital property. Instead, he quarrels with the chancellor's valuation of the partly paid off acquisition. *Schweizer v. Schweizer,* 55 Md.App. 373, 462 A.2d 562, *cert. granted,* 298 Md. 49 (1983), a decision handed down by this Court after the chancellor made his findings, supports appellant's argument that the chancellor should have valued the truck downward to reflect the unpaid debt of $3000. In *Schweizer,* we held that where the remaining value of the marital property had not been acquired, that amount could not be subject to equitable distribution. *Id.* at 378, 462 A.2d 562.

Accordingly, on remand, the chancellor should value the truck at $4700. This value reflects the $1700 paid as a down payment as well as the $3000 paid by appellant at the time of trial for the truck's financing.

## VIII. *Contribution*

The parties' home was owned as tenants by the entireties. In October 1979 they entered into an agreement whereby they separated their funds and each contributed fifty percent to the mortgage payments, taxes and insurance in connection with the marital home. Both parties lived by this agreement until June 1981 when appellee moved out of

---

4. For reasons unexplained, the chancellor found that appellant paid $7800 for the truck. We shall use the figure supported by the uncontradicted testimony.

the marital home. At issue at the trial was whether appellee stopped paying due to an express agreement between the parties. The parties provided contradictory evidence on this issue and the chancellor found that appellee's contribution to the marital home's maintenance was not required because appellant "agreed to assume responsibility for the mortgage" and that "he made no demand for contribution until after this litigation had begun." The chancellor further found that appellant's actions of asking appellee to return her house keys and changing the locks to the marital home amounted to an ouster of appellee. The chancellor alternatively stated that even without an agreement and subsequent ouster, contribution was inappropriate because appellant received an untaxed housing allowance.

When one co-tenant pays the mortgage, taxes and other carrying charges of property held as tenants by the entireties that co-tenant is entitled to contribution absent an agreement between the parties. *Crawford v. Crawford,* 293 Md. 307, 443 A.2d 599 (1982); *DiTommasi v. DiTommasi,* 27 Md.App. 241, 340 A.2d 341 (1975). Maryland Rule 1086 precludes this Court from setting aside a chancellor's factual finding where that finding is supported by the evidence. While appellant did put forth some evidence that he had instructed his attorney to draw up a letter requesting that appellee resume her contributions, this action did not occur until ten months after appellee left. In view of this evidence, we cannot say that the chancellor's conclusion that the parties agreed that appellant would assume payment of the mortgage was clearly erroneous.

As we have held that one of the chancellor's three reasons was sufficient for denying appellant contribution, we shall not address the other reasons stated for his finding. We do note, however, that the chancellor's statement that "there is no contribution in the case of ouster" is partially incomplete. This Court has held that the appropriateness of contribution where one spouse has been ousted shall be made on a case-by-case basis. *Bender v. Bender,* 50 Md.App. 174,

181, 436 A.2d 518 (1981), *cert. denied,* 292 Md. 555 (1982). To be considered is "whether equity or fairness requires that appropriate expense payments made by the spouse in possession should be credited in calculating what is due the ousted spouse for loss of use and enjoyment of property." *Id.*

*The Cross Appeal—Award of Costs and Attorney's Fees*

■ Appellee/cross-appellant, in contending that the chancellor's award of costs and attorney's fees is insufficient, argues that "cross-appellee can better afford the substantial cost of this litigation than cross-appellant, and he should be required to contribute more than that ordered below."

Appellant/cross-appellee counters that a "very large portion of the attorney's fees generated in this case was neither reasonable nor necessary." While we recognize that an award of attorney's fees in a divorce action is a matter subject to the sound discretion of the trial court, and that such an award ought not be modified unless it is arbitrary or clearly wrong, *Lopez v. Lopez,* 206 Md. 509, 520–21, 112 A.2d 466 (1955), we note that the chancellor himself found "that discovery was needlessly and unconscionably protracted" and pointed out the transgressions of the appellant in that regard. He observed that:

> [D]iscovery was needlessly and unconscionably protracted. [Appellant] admitted that in his Interrogatories, *inter alia,* he failed to list 10 out of 19 bank accounts, that he made a "mistake" about the number of securities that he owned, and that he lied about a gift from his mother. While [Appellant] stated that the untruth had been "corrected at Deposition", the Court observes that a costly Deposition would not have been necessary if [Appellant] had answered his Interrogatories fully and truthfully.

Although the trial court in exercising its discretion concluded that the award of $2500. as contribution towards costs and attorney's fees was fair and could be paid by the appellee from her financial payment and the proceeds of the sale of the jointly owned home, the chancellor erroneously

overlooked that portion of her fees directly attributable to the needless and unconscionable protraction of discovery which the chancellor apparently laid at the feet of the appellant. Although we do not suggest that the chancellor must award the exact amount billed by appellee's counsel, we do believe that a recalcitrant litigant should not be rewarded for needlessly and unconscionably protracting discovery. Accordingly, on remand the chancellor may wish to reconsider the award in light of appellant's contribution to the needless protraction of discovery.

*Summary*

We have affirmed:

(a) the chancellor's finding that the securities acquired during marriage were marital property;

(b) the chancellor's distribution of the money in the joint credit union account;

(c) the chancellor's award of interest for funds in the aforementioned joint credit union account; and

(d) the chancellor's denial of contribution by the appellee to appellant for mortgage, taxes and insurance paid on the marital home subsequent to appellee moving out of that home.

We are remanding this case so that the chancellor may:

(a) determine the value of the marital portion of appellant's pension;

(b) determine the correct value of the securities acquired during marriage;

(c) adjust the value of appellant's truck to reflect the unpaid debt;

(d) adjust appellee's monetary award in view of his findings under (a), (b), and (c) of this section; and

(e) consider an award of additional counsel fees.

JUDGMENTS AFFIRMED IN PART; REVERSED IN PART; CASE REMANDED FOR FURTHER PROCEED-

184

INGS CONSISTENT WITH THIS OPINION; COSTS TO
BE DIVIDED EQUALLY.