# MARY E. SCHWEIZER v. THOMAS SCHWEIZER

[No. 1534, September Term, 1982.]

*Decided July 12, 1983.*

374

The cause was argued before LOWE, WEANT and ADKINS, JJ.

*Daniel F. Thomas,* with whom were *Thomas & Kalichman* on the brief, for appellant.

*William W. Cahill, Jr.,* with whom were *Richard C. Burch* and *Weinberg & Green* on the brief, for appellee.

WEANT, J., delivered the opinion of the Court.

This case requires exploration of another nook in the Marital Property Act (the Act), §§ 3-6A-01 to -07 of the Courts and Judicial Proceedings Article. Both husband and wife have taken an appeal. Principally, the parties are at loggerheads over the monetary award granted the wife by the Circuit Court for Baltimore County. The wife contends the award is inadequate; the husband argues that no award should have been granted.

Thomas Schweizer (husband) and Mary E. Schweizer (wife) were married on 14 March 1963. Both brought children from prior marriages to this union. Although no chil-

dren were born of this marriage, Thomas adopted and supported Mary's son from her earlier matrimony.

Thomas' substantial wealth was funded by an inheritance from his father and by two trusts of which he was beneficiary. Mary brought little financial wherewithal to the marriage. Notwithstanding their cohabitation of fifteen years, there was discord from the beginning and the parties were granted a divorce *a vinculo matrimonii* in 1982 after three years of uninterrupted separation. Mary was awarded monthly alimony of $2,000.00. The trial court valued the marital property at $322,182.00 and awarded the wife 25% thereof, or $80,546.00.[1]

The parties' opulent lifestyle was supported, in large measure, by resort to the husband's line of credit at the Equitable Trust Company. Equitable was apparently willing to extend a large line of credit to Thomas because several nonmarital assets secured repayment of the same. Both sides agreed that debt taken on during the marriage, the proceeds of which were often used to fund marital expenditures, must be considered in granting "a monetary award as an adjustment of the equities and rights of the parties concerning marital property." Section 3-6A-05 (b). They are divided, however, in which stage of the statutory scheme marital debts should be accounted for.

Section 3-6A-05 envisions a three-step process. First, the court determines which property is marital property. Second, the marital property is valued. Finally, after a weighing of the nine factors enumerated in the statute, the court *may* grant a monetary award as an adjustment of the parties' equities and rights concerning the marital property. Husband contends that marital debts should be accounted for at the second step, or valuation stage, by subtracting marital liabilities from the marital assets to arrive at the value of the marital property. The wife argues that, in the absence of marital debts which specifically encumber mari-

---

1. We call the trial court's attention to the fact that a marital asset, a promissory note, was incorrectly valued at $30,000.00. Both parties agree the note is actually worth $10,000.00.

tal assets, outstanding marital debts have nothing to do with the *value* of marital property and should merely affect the fairness of the way in which assets are divided. Her position asserts that marital debts should be accounted for further downstream at the third step. Specifically, she believes such debts signed only by Mr. Schweizer should be included under the third factor in step three which requires the court to consider "the economic circumstances of each spouse at the time the award is to be made."

This question has not been decided by a Maryland appellate court and decisions from other jurisdictions are of little help. The wife focuses our attention on two Missouri cases, *Waitsman v. Waitsman,* 599 S.W.2d 42 (Mo. App. 1980) and *N.J.W. v. N.E.W.,* 584 S.W.2d 148 (Mo. App. 1979). Husband counters these decisions by pointing to cases from South Dakota, *Hansen v. Hansen,* 302 N.W.2d 801 (S.D. 1981), North Dakota, *Hoge v. Hoge,* 281 N.W.2d 557 (N.D. 1979), and Colorado, *In re Marriage of Femmer,* 39 Colo. App. 277, 568 P.2d 81 (1977), which hold, basically, that courts are really dividing the net worth of marital property and liabilities must be accounted for in computing net worth.

All of these cases are unpersuasive because none of the respective statutes has a separate and distinct requirement that marital property be valued. Generally, the statutes direct the court to divide the marital property in just proportions after considering all relevant factors. Maryland's Act, however, separates out the valuation and division processes.

We start our analysis with this Court's recent decision in *Ward v. Ward,* 52 Md. App. 336, 449 A.2d 443 (1982). In *Ward,* the only marital property was the marital residence. This Court recognized that the value of the property could not exceed the parties' equity in the home. The home was found to have a value of $60,000.00 subject to an existing mortgage of $28,000.00. The trial court, in effect, granted a marital award of $40,000.00. We capped any monetary award at $32,000.00 which represented the equity in the home:

> [T]he chancellor's ruling violates the most basic principles governing monetary awards. Since the function of a monetary award is to *adjust the parties' equities in the marital property,* it is elemental that a court cannot make an award whose amount exceeds the total value of the marital property. Here the court awarded $50,000 (or a net of $40,000) based on marital property worth only $32,000. [*Ward, supra,* 52 Md. App. at 343, emphasis added.]

The purpose of the Marital Property Act as expressed in the Report of the Governor's Commission on Domestic Relations Law at 1 (1982) is to "end the inequity inherent in Maryland's old 'title' system of dealing with the marital property of divorcing spouses." The language of § 3-6A-01 (e) makes clear that the characterization of property as marital or nonmarital under § 3-6A-05 (a) is not dependent upon the legalistic concept of title. *Harper v. Harper,* 294 Md. 54, 448 A.2d 916 (1982).

Were we to accept the wife's position, we would be forced to distinguish this case from the situation presented in *Ward, supra,* solely on the grounds that these marital debts were in husband's name only and because the mortgage or debt impairs the *title* to nonmarital property. Such an approach would ignore the economic realities of the debt and represent a return to pre-Act times when title was the touchstone. We believe the thrust of the Act would be frustrated and inequitable results would obtain were courts to ignore title when characterizing property as marital or nonmarital only to hold title sacred when considering the acquisition of that property.

In *Harper, supra,* the Court of Appeals held that the source of funds was of paramount importance in characterizing property as marital or nonmarital. In applying the source of funds theory, the Court of Appeals defined the term "acquired" appearing in § 3-6A-01 (e) as "the on-going process of making payment for property." *Id.* at 294 Md. 80. We believe the source of funds is equally important in

determining the *value of marital property acquired during the marriage.* Therefore, if one of the spouses takes on debt during the marriage to purchase marital property, and that debt or a portion thereof is outstanding at the time a monetary award is being considered, then the value of the marital property eligible for equitable distribution must be adjusted downward to reflect the unpaid liability. The value of marital property has not been "acquired," and therefore is immune from distribution, to the extent that the source of funds employed to finance the property is an outstanding debt, irrespective of how the debt is titled or secured.

This approach is necessary to avoid a possible "transmutation" of nonmarital property into marital property serving as a monetary award. The *Harper* Court recognized that such a result is contrary to Legislative intent:

> Indeed, the language of § 3-6A-01 (e), which sets forth an exclusive list on nonmarital property, indicates a legislative intent that the value of certain property not be subject to equitable distribution, and that the interests of spouses making nonmonetary contributions be protected *without depriving the other spouse of nonmarital property.* To permit nonmarital property to be "transmutated" into marital property and, therefore, to be subject to equitable distribution deprives a spouse of nonmarital property and is, therefore, contrary to legislative intent. [*Harper, supra,* 294 Md. at 80; emphasis added.]

We think the thurst behind the three step statutory scheme is to ignore titles and limit any monetary award to the equity the parties have built up in marital property after paying off any debts taken on to acquire the marital property. Therefore, the value of any marital property represented by outstanding marital debt has not been "acquired" for purposes of an equitable distribution by way of a monetary award. To qualify under this rule, however, any unpaid marital debt must be directly traceable to the acquisition of marital property.

Because there has been no finding by the chancellor of how much, if any, marital debt exists, we shall vacate the monetary award to Mary E. Schweizer of $80,546.00 and remand to the Circuit Court for Baltimore County for proceedings in accordance with this opinion.

## Miscellaneous Issues

The wife alleges error in the chancellor's findings that the Canco Road property was not marital property. Her first argument is that the property was acquired during the marriage and hence marital property by definition. Secondly, it is argued that at least part of the property is marital on the basis that some payments were made with marital funds.

The Canco Road property was acquired in 1965 by the Charlesmeade Corporation of which husband was the sole stockholder. The corporation was dissolved in 1966, three years after the marriage, and the Canco Road property was distributed to Thomas in liquidation. Notwithstanding the fact that Thomas acquired direct title to the property in 1966, its acquisition is directly traceable to "property acquired prior to the marriage," *i.e.,* the stock. Section 3-6A-01 (e). Property acquired prior to marriage, and property directly traceable to that source, is excluded from the definition of marital property.

To support the second leg of her argument, Mary argues that even though the property was conveyed to Thomas in 1966, there were still payments to be made on it. She claims some of those payments were made from marital funds and, therefore, a proportionate share of the property is marital. *Harper, supra.* Canco Road has always been a rental property. The record makes clear that most of the mortgage payments came from the rentals. However, there is also evidence in the record which suggests that some payments, or portions thereof, might have been made with marital funds.

The chancellor characterized the property as nonmarital because it "was acquired before marriage." *Harper* established that "acquire" means "the on-going process of making

payment for property." Whether property is characterized as marital or nonmarital depends upon the source of each payment, rather than the time when legal or equitable title is obtained. Because payments for the Canco Road property were made subsequent to the time of the marriage, there is the possibility that some payments were made with marital funds. On remand to the Circuit Court for Baltimore County it should determine whether the source of each payment was nonmarital property or property directly traceable thereto. *See Harper, supra.*

The wife also challenges the chancellor's determination that 24,000 of the 25,200 shares in the Rouse Co. titled in the husband's name were nonmarital assets. She argues:

> ... he shares in business discussions, is asked for and makes his opinion known, and votes on matters affecting the corporation. His participation in the management of the corporation is a marital effort, and it is reasonable to infer the increases [in the stock values] ... are marital property.

We reject this argument for two reasons.

First, the extent to which shares acquired before marriage increased in value due to Mr. Schweizer's position on the Board is too tenuous and speculative to consider. Secondly and more importantly, the *quid pro quo* for his contributions *qua* director came in the form of Director's fees. These sums were used for marital expenditures. We shall, therefore, affirm the chancellor's findings that 24,000 of the 25,200 shares of Rouse Co. stock were nonmarital assets.

The wife also feels aggrieved because the chancellor found the husband had not made her a gift of a certain diamond pin, ring, and bracelet. The items forming the nucleus of this dispute were inherited by Thomas upon his mother's death. The chancellor found that some jewelry was given to the wife during the marriage but excluded these three items from that group, notwithstanding the fact that Mary had been permitted to possess and wear them during the marriage. The chancellor, unlike this tribunal, had the opportunity to

observe the demeanor of the parties, to judge their credibility, and to pass upon the weight to be given their testimony. *DiTommasi v. DiTommasi,* 27 Md. App. 241, 246, 340 A.2d 341 (1975). We have reviewed the record and, in light of the evidence presented before the chancellor, cannot say that his findings were clearly erroneous. We must, therefore, affirm his decision on this issue. Md. Rule 1086.

Finally, Mary alleges that the contribution required of Thomas towards her counsel fees was totally inadequate. The general rule with respect to counsel fees was set forth in *Danziger v. Danziger,* 208 Md. 469, 475, 118 A.2d 653 (1955):

> The amount of the award of counsel fees is within the discretion of the chancellor and, although his discretion is subject to review by this Court, the award should not be disturbed unless he exercised his discretion arbitrarily or his judgment was clearly wrong.

After reviewing the record, not only are we convinced that the award was not an abuse of discretion, but, were we afforded the opportunity to substitute our independent judgment for the chancellor's, we do not believe Mrs. Schweizer would fare any better. Absent any abuse of discretion, the chancellor's decision must be affirmed. Md. Rule 1086.

> *So much of the order of the Circuit Court for Baltimore County granting a divorce a vinculo matrimonii to the parties and covering the personal property of the parties and attorney's fees are hereby affirmed.*
>
> *That part of the order granting a monetary award is vacated and the matter remanded to the Circuit Court for Baltimore County for further proceedings in accord with this opinion.*
>
> *Costs to be divided equally between the parties.*