484 A.2d 267

**Mary E. SCHWEIZER**

v.

**Thomas SCHWEIZER.**

**No. 122, Sept. Term, 1983.**

Court of Appeals of Maryland.

Dec. 4, 1984.

**628**

Daniel F. Thomas, Baltimore (Thomas & Kalichman, Baltimore, on brief), for appellant.

William W. Cahill, Jr., Baltimore (Richard C. Burch, Michael P. Smith and Weinberg & Green, Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON,* RODOWSKY and COUCH, JJ.

MURPHY, Chief Judge.

By ch. 794 of the Acts of 1978, now codified as Maryland Code (1984), §§ 8–201 through 8–213 of the Family Law Article, the General Assembly of Maryland enacted the Property Disposition in Annulment and Divorce Law (the Act).[1] The Act indicates that nonmonetary contribu-

---

* Davidson, J., participated in the hearing of the case and in the conference in regard to its decision, but died prior to the adoption of the opinion by the Court.

**1.** The provisions of the Act were formerly contained in § 3–6A–01 through § 3–6A–08 of the Courts and Judicial Proceedings Article. The sections were repealed by ch. 296 of the Acts of 1984, effective October 1, 1984. The provisions were transferred to the Family Law Article with no substantive changes here pertinent. Although the divorce decree in this case was entered prior to the effective date of the changeover, we shall cite to the Family Law sections to obviate any confusion with respect to statutory references. Hereinafter, cita-

tions within a marriage should be recognized in the event that a marriage is dissolved; that a spouse whose activities do not include the production of income may nevertheless have contributed toward the acquisition of property by either or both spouses during the marriage; that when a marriage is dissolved, the property interests of the spouses should be adjusted fairly and equitably, with careful consideration given to both monetary and nonmonetary contributions made by the respective spouses; and that the accomplishment of these objectives necessitates that there be a departure from the inequity inherent in Maryland's old "title" system of dealing with the marital property of divorcing spouses. *See Grant v. Zich,* 300 Md. 256, 267–268, 477 A.2d 1163 (1984); *McAlear v. McAlear,* 298 Md. 320, 343, 469 A.2d 1256 (1984); *Harper v. Harper,* 294 Md. 54, 62–64, 448 A.2d 916 (1982); *Deering v. Deering,* 292 Md. 115, 117, 437 A.2d 883 (1981); *Wimmer v. Wimmer,* 287 Md. 663, 667 n. 2, 414 A.2d 1254 (1980); *Pitsenberger v. Pitsenberger,* 287 Md. 20, 24–25, 410 A.2d 1052, *appeal dismissed* 449 U.S. 807, 101 S.Ct. 52, 66 L.Ed.2d 10, *rehearing denied,* 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980); *Bender v. Bender,* 282 Md. 525, 534–535 n. 7, 386 A.2d 772 (1978).

The Act "substantially modified the traditional property rights of the husband and wife in a divorce proceeding ...." *Deering, supra,* 292 Md. at 117, 437 A.2d 883. Although the court in granting a divorce "may not transfer the ownership of personal or real property from 1 party to the other," § 8–202(a)(3), the Act created a statutory scheme whereby the court may grant a monetary adjustment of the equities of the parties concerning marital property, § 8–205(a). A monetary award is reached by a three step process:

(1) [T]he court shall determine which property is marital property .... § 8–203(a).

---

tions to sections are to sections of the Family Law Article unless otherwise specified.

(2) The court shall determine the value, of all marital property.  § 8–204.

(3) [Upon compliance with (1) and (2) ], the court may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded.  The court shall determine the amount and the method of payment of a monetary award . . . .  § 8–205(a).

█ The court is governed in the first step by the statute's broad definition of marital property.  Section 8–201(e) declares:

(1) "Marital property" means the property, however titled, acquired by 1 or both parties during the marriage.

(2) "Marital property" does not include property:

(i) acquired before the marriage;

(ii) acquired by inheritance or gift from a third party;

(iii) excluded by valid agreement;  or

(iv) directly traceable to any of these sources.

In determining the amount and method of payment of an award, the court is obliged to consider each of ten specified factors.  The third factor is "the economic circumstances of each party at the time the award is to be made" and the tenth is "any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award."  § 8–205(a)(1) through (10).

█ This "new legislative approach to the concept of marriage," *Deering,* 292 Md. at 122, 437 A.2d 883, should be liberally construed, *Harper, supra,* 294 Md. at 61, "to adjust the property interests of spouses fairly and equitably upon the dissolution of their marriage, and to give careful consideration to both monetary and nonmonetary contributions by the spouses to the well-being of the family," *Bender, supra,* 282 Md. at 534–535 n. 7, 386 A.2d 772. What constitutes "marital property" under § 8–201(e) is clearly "not dependent upon the legalistic concept of title." *Harper, supra,* 294 Md. at 78, 448 A.2d 916.  Nor does a determination of what constitutes marital property depend

upon the factors enumerated in § 8–205(a). Those factors come into play only with respect to the amount of the award and the method of its payment. What property is marital property and the value of that property must be determined before that step in the scheme is reached. *Harper, supra,* 294 Md. at 79–80, 448 A.2d 916. We there concluded with respect to which property is marital property that

> under the Maryland Act the appropriate analysis to be applied is the source of funds theory. Under that theory, when property is acquired by an expenditure of both nonmarital and marital property, the property is characterized as part nonmarital and part marital. Thus, a spouse contributing nonmarital property is entitled to an interest in the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property. The remaining property is characterized as marital property and its value is subject to equitable distribution. Thus, the spouse who contributed nonmarital funds, and the marital unit that contributed marital funds each receive a proportionate and fair return on their investment. 294 Md. at 80, 448 A.2d 916.

We recognized, however, that in order to apply this theory, "acquired" as it appears in the statutory definition of "marital property," § 8–201(e) must be construed

> as the on-going process of making payment for property. . . . Under this definition, characterization of property as nonmarital or marital depends upon the source of each contribution as payments are made, rather than the time at which legal or equitable title to or possession of the property is obtained. 294 Md. at 80, 448 A.2d 916.

The utilization of this definition of the term "acquired," coupled with the application of the source of funds theory, leads not only to the determination of which property is marital property (the first step) but also to the determination of the value of that property (the second step). In *Grant, supra,* we reiterated the "principles enunciated in *Harper* governing the method of calculating nonmarital and

marital interests and the value of marital property." 300 Md. at 276 n. 9, 477 A.2d 1163. We said:

> Property is nonmarital in the ratio that the nonmarital investment bears to the total nonmarital and marital investment in the property. To the extent that property is nonmarital, its value is not subject to equitable distribution. Property is marital in the ratio that the marital investment bears to the total nonmarital and marital investment in the property. To the extent that the property is marital, its value is subject to equitable distribution. *Id.*

We illustrated the proper application of these principles with this example:

> A husband and wife acquired real property for a purchase price of $40,000. The wife contributed a down payment of $10,000 from property that she acquired prior to marriage. The remaining $30,000 was financed by a mortgage signed by both the husband and the wife. One-quarter of the value of the property is the wife's nonmarital property and three-quarters of the value of the property is marital property.
>
> If, at the time of the dissolution of the marriage, the property has appreciated in value to a fair market value of $60,000 and the mortgage indebtedness has been reduced to $20,000 by the payment of $10,000 of marital funds, the following division would be appropriate. One-quarter of the $60,000 fair market value of the property, or $15,000, would be the wife's nonmarital property, not subject to equitable distribution. From the remaining $45,000, $20,000, representing the unpaid mortgage balance, would be deducted leaving $25,000 as the net value of the marital property subject to equitable distribution. *Id.* at 276–277, 477 A.2d 1163.

The Act does not set out how debts of the parties are to be treated with respect to a monetary award. Nor have we had occasion in our past decisions to address the question other than incidentally in the example noted in *Grant* to illustrate the principles enunciated in *Harper*. The ques-

tion of the effect on a monetary award of certain outstanding debts is now before us.

The Circuit Court for Baltimore County issued a decree divorcing Mary E. Schweizer *a vinculo matrimonii* from Thomas Schweizer. The decree contained an order granting a monetary award to the wife. Neither party was satisfied. The wife thought that the amount awarded should have been greater. The husband believed that no monetary award at all should have been granted. Each appealed. The Court of Special Appeals vacated the decree and remanded the case with direction to the trial court to redetermine the amount of the award under guidelines set out in the appellate court's opinion. *Schweizer v. Schweizer*, 55 Md.App. 373, 381, 462 A.2d 562 (1983). Again, both the husband and wife were dissatisfied. Both of them thought, albeit for different reasons, that the Court of Special Appeals had erred in its directions to the trial court for the redetermination of the amount of the award. Each sought the issuance of a writ of certiorari. We granted both petitions; they presented a common contention—that the method directed by the intermediate appellate court for the computation of the amount of the monetary award was erroneous.

The trial court found that the husband's assets totaled $1,436,882. They consisted of shares of stock, bonds, mortgages, real properties, notes, interests in partnership ventures and the cash value of life insurance. There being a dispute as to whether some of these assets were marital property, the court made a determination. It found that certain of the shares of stock, notes, mortgages, real properties and life insurance were marital property with a total value of $322,182.[2] After considering each of the factors

---

2. In determining the value of the husband's life insurance, which was deemed to be marital property, the court deducted the amount of a loan secured by the cash value of the policy. We note that the net cash value of the insurance was $62,700 and that the loans thereon totaled $46,000 for a net cash value of $16,700. In computing the

listed in § 8-205(a), the court determined that the wife was entitled to a monetary award in the amount of 25% of the value of the marital property, which the court computed to be $80,546. This was the amount of the monetary award designated in the decree. At the time of the grant of the award, however, the husband was indebted in the amount of $440,000; the debt was incurred by the husband during the marriage of the parties. None of it, however, was secured by marital property. Certain shares of stock owned by the husband, not included as a marital asset, served as collateral for loans totalling $350,000, and $90,000 represented unsecured loans made on the husband's signature alone. It is apparent that the trial court did not offset any of this indebtedness in arriving at the values it placed upon the various marital properties. It took each item of marital property at its actual current value as established by the evidence, except for inadvertent errors as to the life insurance and one promissory note. *See* note 2, *supra*. The opinion of the court accompanying the decree did not reveal what consideration, if any, the court gave to the $440,000 indebtedness of the husband in arriving at the amount of the monetary award.

There was evidence indicating that the parties' opulent life style was supported, in large measure, from the proceeds of the husband's loans which were often used to fund marital expenses. Both parties agree that the monies from these loans must be considered in granting a monetary award. They differ, however, as to how they should be considered. *Schweizer*, 55 Md.App. at 375, 462 A.2d 562. The husband would have the total amount of his debts

---

amount of the marital property, however, the court used a net cash value of only $16,000.

Furthermore, as the Court of Special Appeals noted, a promissory note deemed to be a marital asset was incorrectly valued at $30,000. The evidence showed, and both parties agreed, that the actual value was $10,000. *Schweizer v. Schweizer*, 55 Md.App. 373, 375 n. 1, 462 A.2d 562 (1983). Thus, it seems that the value of the marital property, under the trial court's method of computation, should have been $302,882.

deducted from the total value of the marital assets in order to ascertain the actual value of the marital property. This would be done in the second step of the process leading to a monetary award under § 8–204, which commands the trial court to determine the value of all marital property. If this formula were applied here, the marital property would have a "negative" value, since the amount of the indebtedness exceeded the value of the marital property. With no marital property of value remaining, there would be no call for the grant of a monetary award, and the third step in the process would not be invoked.

The wife's view is that debts incurred during the marriage have no relevance in the determination of the *value* of marital property unless the debts specifically encumber that property.[3] Therefore, she claims that inasmuch as the husband's debts do not directly encumber any of the marital assets, they should not be considered under the valuation (second) step of the process, but under the third step whereby the amount of the award and the method of its payment is determined as prescribed by § 8–205(a). The debts would be within the ambit of factor (3) of that section, to wit, "the economic circumstances of each party at the time the award is to be made" or under the catch-all factor (10).

The Court of Special Appeals was not persuaded to follow the view of either the husband or the wife. It looked to *Harper v. Harper, supra.* Without the benefit of *Grant's* explication of that case, the Court of Special Appeals construed *Harper's* source of funds theory, coupled with the definition of "acquired" as the "on-going process of making payment for property," to apply only to the characterization of property as marital or nonmarital. *Schweizer, supra,* 55 Md.App. at 377, 462 A.2d 562. But, the intermediate appel-

---

**3.** We observe that in determining the value of the husband's life insurance, the trial court deducted from its actual cash value the outstanding balance on a loan secured by the policy. *See* note 2, *supra.*

late court believed that "the source of funds is equally important in determining the *value of marital property acquired during the marriage.*" Id. at 377–378, 462 A.2d 562 (emphasis in original). On this premise the court concluded:

[I]f one of the spouses takes on debt during the marriage to purchase marital property, and that debt or a portion thereof is outstanding at the time a monetary award is being considered, then the value of the marital property eligible for equitable distribution must be adjusted downward to reflect the unpaid liability. The value of marital property has not been "acquired," and therefore is immune from distribution, to the extent that the source of funds employed to finance the property is an outstanding debt, irrespective of how the debt is titled or secured. *Id.* at 378, 462 A.2d 562.

The court observed that

the thrust behind the three step statutory scheme is to ignore titles and limit any monetary award to the equity the parties have built up in marital property after paying off any debts taken on to acquire the marital property. *Id.*

"Therefore," the court asserted, "the value of any marital property represented by outstanding marital debt has not been 'acquired' for purposes of an equitable distribution by way of a monetary award." *Id.* The court emphasized: "To qualify under this rule, however, any unpaid marital debt must be directly traceable to the acquisition of marital property." *Id.* The reiteration in *Grant, supra,* 300 Md. at 276–277 n. 9, 477 A.2d 1163, of the principles enunciated in *Harper,* read with the example given to illustrate those principles, substantiates the belief of the Court of Special Appeals that the source of funds theory applies also to a determination of the *value* of marital property subject to equitable distribution.

■ *Harper* teaches that a "marital debt" is a debt which is directly traceable to the acquisition of marital property.

Conversely, a "nonmarital debt" is a debt which is not directly traceable to the acquisition of marital property. That part of marital property which is represented by an outstanding marital debt has not been "acquired" for the purpose of an equitable distribution by way of a monetary award. Therefore, the value of that marital property is adjusted downward by the amount of the marital debt. That is to say, a marital debt is considered under the second step of the process followed in reaching a monetary award, namely the valuation of marital property.

■ A nonmarital debt may not serve to reduce the value of marital property. It has no function in the second step of the process. But it may be taken into consideration in the third step of the process—the determination of the amount and method of payment of the award. The amount outstanding on a nonmarital debt of a party clearly reflects on that party's economic circumstances at the time the award is to be made. § 8–205(a)(3).

We offer a hypothetical example within the facts of this case. The trial court determined that a parcel of real property known as Betty Bush Lane was marital property and that it had a value of $150,000. Suppose the husband were able to trace $100,000 of his indebtedness directly to the acquisition of Betty Bush Lane. In that event, the value of that property for the purpose of an equitable distribution would be reduced to $50,000. By the same token, the husband's total indebtedness of $440,000 would be reduced by the $100,000 marital debt, leaving him with a nonmarital debt of $340,000. That nonmarital debt may be taken into account by the trial court, under the economic circumstances factor, in its determination of the amount and method of payment of any monetary award granted.

■ The Court of Special Appeals vacated the decree granting the monetary award "[b]ecause there has been no finding by the chancellor of how much, if any, marital debt exists ...." *Schweizer, supra,* 55 Md.App. at 379, 462 A.2d 562. This was not erroneous. It further remanded

the case to the Circuit Court for Baltimore County for proceedings in accord with its opinion. The remand for additional proceedings is, of course, proper, but the proceedings before the trial court must be in accord with the opinion of this Court rather than with the opinion of the Court of Special Appeals. This is so because the opinion of the Court of Special Appeals does not spell out that a nonmarital debt may be considered under factor (3) of § 8–205(a) in the determination of the amount and method of payment of a monetary award.

On remand to the Circuit Court for Baltimore County that court shall (1) find what portion of the husband's indebtedness, if any, is a marital debt, that is, directly traceable to the acquisition of marital property of the parties; (2) redetermine the value of the marital property in the light of any marital debt; and (3) redetermine the amount and method of payment of the monetary award after consideration of the ten factors enumerated in § 8–205(a), including in the consideration of factor (3) the impact of any nonmarital debt on the economic circumstances of the husband.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED EXCEPT AS TO THE DIRECTION TO THE CIRCUIT COURT FOR BALTIMORE COUNTY TO CONDUCT FURTHER PROCEEDINGS IN ACCORD WITH THE OPINION OF THE COURT OF SPECIAL APPEALS;

CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTION TO REMAND TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS IN ACCORD WITH THE OPINION OF THE COURT OF APPEALS;

COSTS TO BE PAID ONE-HALF BY EACH PARTY.