565 A.2d 361

Maro A. ROGERS

v.

Walter D. ROGERS

No. 202 Sept. Term, 1989.

Court of Special Appeals of Maryland.

Nov. 3, 1989.

**576**

John S. Weaver (Stephen E. Moss, on the brief), Bethesda, for appellant.

Joseph C. Paradiso (Lewis, Dack, Paradiso, O'Connor & Good, on the brief), Washington, D.C., for appellee.

Argued before BLOOM, ROSALYN B. BELL, and CATHELL, JJ.

BLOOM, Judge.

The Circuit Court for Montgomery County granted appellant, Maro A. Rogers, a divorce *a vinculo matrimonii* from appellee, Walter D. Rogers. It also granted appellant a monetary award of $15,000. By consent, appellee was awarded custody of the minor child of the parties, Farro T. Rogers, who was born 9 June 1976; appellant was not required to contribute financially to the support of the child. Appealing from that judgment, Mrs. Rogers contends that the court made several errors with respect to ownership and valuations of property, leading to an inequitable monetary

award. She also contends that the court abused its discretion in denying her requests for alimony and counsel fees. We agree with appellant's assertion that the circuit court failed to apply the statutory criteria set forth in the Family Law Article of the Maryland Annotated Code pertaining to alimony awards and distribution of marital property. Accordingly, we will reverse the portions of the judgment affected by those errors and remand for further proceedings. The remand makes it unnecessary for us to address appellant's assertion that the court erred in denying her request for a brief continuance.

## I *Background*

Mr. and Mrs. Rogers were married in May 1974. They are now 46 and 37 years of age, respectively. Mr. Rogers was temporarily unemployed at the time testimony was taken before the Domestic Relations Master, but he is presently employed by Merrill Lynch as an investment portfolio manager, with an annual income in excess of $115,000. In fact, for the past 10 years, he has regularly enjoyed an annual income in excess of $100,000. For a time after the parties were married, Mrs. Rogers did clerical work in an office. She stopped working in 1976 to raise her son and maintain the marital home. In December 1984 she went back to work, at an annual salary of $17,500, but that job lasted only about 14 months. She then decided to go back to school. Currently, Mrs. Rogers is attending the University of Maryland in order to attain a bachelor's degree in economics and, possibly, a masters degree in business administration.

Mrs. Rogers filed a petition for Chapter 7 bankruptcy and received a discharge in bankruptcy in July, 1988.

Other relevant facts will be discussed in connection with the issues to which they pertain.

## II *The Proceedings*

On 28 May 1985, following an evidentiary hearing, the domestic relations master recommended and the court issued a *pendente lite* order compelling appellee to pay

appellant $300 per month as alimony and $1,400 as child support. On 19 September 1985 there was a second *pendente lite* order relating to visitation. Alimony was continued at $300 per month; child support was reduced to $1,000 per month.

Testimony on the merits of the case was presented to a master on July 20, 21, 22, and 24, 1987. The master issued his Proposed Recommendations on October 28, 1987; Mrs. Rogers filed a Notice of Intention to Except; and the master eventually issued his Report and Recommendations on April 22, 1988. The master recommended a monetary award of $12,000 to Mrs. Rogers but no award of alimony or counsel fees. Apparently because the parties were discussing settlement, the exceptions were not set for hearing until December 7, 1988. Pointing out that the evidence was stale,[1] appellant requested that the case be sent back to the master or, in the alternative, that the court receive additional evidence. The court opted to accept additional testimony at the hearing on appellant's exceptions and set that hearing for December 7, 1988. Appellant's request that the hearing be postponed until after December 23 was denied. She failed to appear for the December 7 hearing, at which time Mr. Rogers presented fresh evidence as to value of the former marital home, which was then occupied by Mrs. Rogers, and his new home in New Jersey, which he had purchased subsequent to the separation of the parties. Evidence was presented as to Mr. Rogers's income, and he testified that Mrs. Rogers was then working. He furnished no details as to the nature of her employment or her salary.

---

**1.** Md.Rule S75c provides:
 c. *Stale Testimony*
 In an action for divorce, annulment, or alimony in which the testimony has been concluded for more than 90 days without the entry of a final decree, a final decree may not be entered until supported by additional testimony justifying the conclusion that there has been no substantial change since the prior testimony was concluded.

The court, apparently basing its decision on the master's findings as modified or supplemented by the evidence it heard, adopted the master's recommendations except for the monetary award, which it increased from $12,000 to $15,000.

### III *Discussion*

#### A. Marital Property and the Monetary Award

Based on the testimony before him, the master made certain findings of fact concerning the parties' properties. He found the total value of all marital property to be $269,980, but we cannot tell how he arrived at that figure, since he made specific findings of value only as to certain items of property and never resolved the dispute between the parties as to the ownership of other items. And although the master concluded that Mrs. Rogers made some monetary contributions from funds sent to her by her family in Iran, he made no determination as to whether such contributions resulted in any of the parties' properties being non-marital in whole or in part. The master found that the largest single item of marital property was a home in New Jersey purchased by Mr. Rogers in his sole name, having a net value of $174,000. Each party was found to have an IRA, with the husband's being worth $5,000 more than the wife's, but no specific value was stated as to either. Each party was found to own an automobile, with the values of the vehicles being about equal. The furniture in the former marital home, then being occupied by the wife, was found to be worth $2,500; the value of the furniture in the husband's house in New Jersey was found to be $3,230. According to the master, "[t]he only property interest that seems to be in dispute is as to a piano valued at $5,000 and some rugs valued at $28,000." The dispute was as to ownership. Mr. Rogers claimed that these items were jointly owned marital property; Mrs. Rogers insisted that they belonged to her parents. That dispute was not resolved, although Mr. Rogers at some point relinquished any claim to the rugs and piano.

As a consequence of the evidentiary hearing before him in December, 1988, the chancellor found that Mrs. Rogers had possession of the piano and rugs, and since Mr. Rogers had relinquished any claim to them he saw no issue to resolve concerning those items. Based on the master's findings, the chancellor noted that the remaining items of personal property located in the respective homes of the parties are of about equal value. That left, in his view, only the former marital domicile and the husband's new home in New Jersey as marital property. In accordance with the testimony he heard, the chancellor found the net value of the former to be $100,000 and the net value of the latter to be $65,000. Based on those values, "and the other factors considered by the master," the chancellor deemed it appropriate to increase the monetary award from $12,000 to $15,000, which he thought "would equitably adjust the property rights of the parties."

The court's findings and conclusions as to property and value, based largely upon those of the master, were rife with error.

### (1) Statutes

We begin our discussion with a summary of the applicable statutory law.[2] Md.Fam.Law Code Ann., Title 8, subtitle 2, authorizes a court, upon granting a divorce or annulment, to resolve disputes between the parties with respect to the ownership of property (§ 8–202) and to grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property (§ 8–205). Marital property is defined in § 8–201(e) as property, however titled, acquired by one or both parties during the marriage, excluding property acquired before the marriage, acquired by inheritance or gift from a third party, excluded by valid agreement, or directly traceable to any of those non-marital sources. If there is any dispute as to whether certain property is marital property, the court shall determine

---

2. Unless otherwise stated, all citations of Maryland statutes in this opinion will be to the Family Law Article of the Annotated Code.

which property is marital property. § 8–203(a). The court is also required to determine the value of all marital property. § 8–204. If disposition of the marital property in accordance with ownership or title will be inequitable, the only means of adjusting the equities is a monetary award; the court may not transfer the ownership of property from one spouse to the other. § 8–202(a)(3).

With those statutory precepts in mind, we turn to appellant's complaints of judicial errors involving the parties' properties and the monetary award of $15,000.

### (2) The Gaithersburg Property

█ The jointly owned marital residence in Gaithersburg, Maryland, was purchased by the parties in 1977 for $74,000. The chancellor found that property to have a present net value (market value less mortgage) of $100,000. The court appears to have found that home to be marital property in its entirety. But in so doing, it ignored uncontradicted (and uncontroverted) evidence that Mrs. Rogers made a contribution of $10,000 toward the purchase of that property, using money that was part of a larger sum she had received from her mother. Although Mrs. Rogers took rather inconsistent positions regarding these funds in requesting relief, her testimony concerning her receipt of the money from her mother was that it was given to her to hold for her mother's benefit. She put the money in a separate account but, with her mother's permission, used $10,000 as a down payment on the house with the understanding that it would be replaced in the separate bank account. Mr. Rogers, on the other hand, asserted that the money was a wedding gift.

This conflicting testimony created a dispute as to whether the Gaithersburg home was entirely marital property or partly marital and partly non-marital property. Was the $10,000 a wedding gift from appellant's mother, as contended by appellee? If so, was it a gift to both bride and groom or, as would appear to be more consistent with appellant's uncontradicted evidence as to how the money was sent and how she handled it, a gift to her alone? Or was the money,

as appellant contended, given to her in trust, to hold for her mother? And if given in trust, was it later converted to a loan by appellant's mother's authorization to use it as a down payment on the realty? Finally, if the $10,000 became a loan to enable the parties to acquire the marital home, was the loan to Mrs. Rogers or to both parties? The court may infer any one of the above possibilities from the testimony of the parties and the surrounding circumstances; and the resolution of the dispute as to whether the property is entirely marital or partially non-marital will depend upon which inference the court chooses to draw.

If the $10,000 used as the down payment on the home was a gift to both husband and wife, the property was entirely marital. If it was a gift to the wife alone, the money was her non-marital contribution and the property is partly marital and partly non-marital. *See Harper v. Harper*, 294 Md. 54, 448 A.2d 916 (1982). The subsequent gift by the wife to the marital unit could not transmute non-marital property to marital. *Watson v. Watson*, 77 Md. App. 622, 638, 551 A.2d 505 (1989). On the other hand, if the parties acquired property with money given to Mrs. Rogers in trust by her mother, that property would equitably belong to appellant's mother.

> It is one of the fundamental principles of equity that where property is purchased, and the legal title is taken in the name of one person, while the purchase price is paid by another, but not as a loan to the grantee, nor from any natural or moral obligation to provide for the grantee, a resulting trust arises by implication of law in favor of the person paying the purchase price, unless a different intention is shown.

*Sines v. Shipes*, 192 Md. 139, 153, 63 A.2d 748 (1949). Where, as may be the case here,

> only a portion of the consideration is so paid a resulting trust may arise in favor of the payor
>
>> in such proportion as the part paid by him bears to the total purchase price, unless he manifests an intention that no resulting trust should arise or that a resulting

trust to that extent should not arise. *Fasman v. Pottashnick, supra,* [188 Md. 105] at 109 [51 A.2d 664 (1947)].

*Levin v. Levin,* 43 Md.App. 380, 387, 405 A.2d 770 (1979).

The concept of a loan creates, in turn, a new set of problems. If the $10,000 down payment on the house was a loan, a marital debt in that amount was created, which if still existing would reduce the net value of this property, as marital property, from $100,000, as found by the court, to $90,000.[3] *See Zandford v. Wiens,* 314 Md. 102, 108, 549 A.2d 13 (1988); *Schweizer v. Schweizer,* 301 Md. 626, 637–37, 484 A.2d 267 (1984); *Harper, supra.*

We have discussed at some length the testimony concerning Mrs. Rogers's $10,000 contribution to the purchase price of the Gaithersburg property; the possible inferences that may be drawn from that testimony; and the effects that each inference might have on the question as to identification and valuation of marital property, in order to emphasize that there exists a genuine dispute on matters affecting the identity and valuation of marital property. The failure of the court even to address that dispute, much less resolve it, was error. Because that error affected the monetary award, the award must be vacated.

### (3) The New Jersey Home

The master's conclusion that the net value of appellee's new house in New Jersey is $174,000 was obviously erroneous. Based on "fresh" testimony, the chancellor found the net value of that property to be $65,000, the evidence before him reflecting a market value of $215,000 and a mortgage debt of $150,000. That net value of the property, however,

---

**3.** We cannot tell from the record before us whether the $10,000 was included among the debts listed in Mrs. Rogers's bankruptcy proceedings. Inclusion of that sum would tend to indicate that Mrs. Rogers, at least, regarded the transaction as a loan. If it was a loan included in the debts listed in the bankruptcy case, the indebtedness would have been extinguished by the discharge in bankruptcy unless it was the joint obligation of both Mr. and Mrs. Rogers, in which case it__ . remains as a marital debt.

is not reflective of the issue to be resolved by the court, which was the value of the marital property. In this case, the value of the marital property exceeds the net value of the property itself because not all of the mortgage debt is marital debt.

■ As explicated by the Court of Appeals in *Schweizer v. Schweizer, supra,* there is a difference between a "marital" debt and a "non-marital" debt. The former is a debt that is directly traceable to the acquisition of property; the latter is not traceable to the acquisition of property. "That part of marital property which is represented by an outstanding marital debt has not been 'acquired' for purpose of an equitable distribution by way of a monetary award. Therefore, the value of marital property is adjusted downward by the amount of the marital debt." 301 Md. at 637, 484 A.2d 267. Consequently, as the Court pointed out in *Niroo v. Niroo,* 313 Md. 226, 545 A.2d 35 (1988), the critical question is not whether marital property is encumbered by a secured debt; it is whether the debt is traceable to the acquisition of marital property.

With that distinction in mind, we turn to the facts of the case before us. The only evidence presented to the chancellor as to the value of the New Jersey property came from appellee and an expert witness produced by him. They agreed that the property was worth $215,000. To arrive at the net value of $65,000 the court subtracted from $215,000 the sum of $150,000, which was the approximate balance of the debt secured by the current mortgage on the property. But not all of that debt was marital debt. The original purchase money mortgage was $113,000. That was a marital debt because it was a debt incurred to acquire the property. Appellant subsequently refinanced the loan, increasing the mortgage indebtedness, and used the additional funds (about $37,000) to pay some of his personal debts. The original mortgage balance at the time of the refinancing was a marital debt; the difference between that amount and the amount of the refinanced mortgage debt was non-marital debt.

The court was required by statute to determine the value of the marital property. It found the *net* value of the New Jersey property to be $65,000. We assume that the court regarded the net value of the real estate to be the same as the value of the marital property. If so, its finding, $65,-000, was clearly erroneous; if not, the failure to make a finding as to the value of this item of marital property was error.

### (4) Personal Property

The court adopted, without change, the master's findings and recommendation as to personal property. The recommendation, in effect, was to leave the personalty where it was, *i.e.*, to let each party keep, as his or her own property, that which was then in his or her possession because they were of "about equal value."

 That disposition may have been permissible with respect to the furniture in the New Jersey home, valued by the master at $3,230, since that furniture was acquired solely by Mr. Rogers after the separation of the parties. It may also have been allowable with respect to the parties' automobiles, provided each was titled in the sole name of the spouse in possession. It was contrary to law with respect to the furniture in the Gaithersburg home which, so far as the evidence discloses, was acquired by the parties jointly while they lived together. Property so acquired is presumed to be jointly owned. *See, Bender v. Bender*, 282 Md. 525, 386 A.2d 772 (1978). Allowing Mrs. Rogers to keep the household furnishings in her possession was tantamount to transferring ownership of that property from both parties to one of them. That the court is not authorized to do. § 8–202(a)(3).

 The household furniture was found to be of relatively little value ($3,230 for the furnishings in New Jersey; $2,500 for those in Gaithersburg), so the erroneous disposition of some of that property was of limited significance. The court's handling of the matter of the piano and oriental rugs, which the master found to be worth $5,000 and

$28,000 respectively, may well have had a substantial impact on the monetary award. The ownership of those items was disputed. Mrs. Rogers testified that the rugs were sent to her by her family for safekeeping; at the hearing before the master she testified that they had been removed from the parties' house and placed in the home of appellant's sister. The piano, according to Mrs. Rogers, was purchased as an investment (on the theory that it would appreciate in value) out of the money Mrs. Rogers's mother had sent her to hold. Mr. Rogers, however, took the position that the rugs as well as the money used to buy the piano were gifts. What we said, *supra*, about the $10,000 down payment on the house is equally applicable to this property. There was a dispute as to ownership, which translated to a dispute as to whether these items constituted marital property. The failure of the court to address and resolve that dispute was error. And that error was not cured or rendered harmless by Mr. Rogers's abandonment of his claim to the property. It appears that, in computing what would be a fair monetary award, the court as well as the master treated those items as marital property in the possession (and thus ownership) of Mrs. Rogers and "credited" her side of the ledger with $33,000 of marital property belonging to her. If in fact the rugs belong to appellant's family and her mother is the equitable owner of the piano, this property is not marital property no matter who has possession of it. And if the piano and rugs were gifts, as appellee contended, they would be marital property only if given to both parties; if given to Mrs. Rogers only, they are non-marital.

The court's failure to resolve disputes as to ownership of property and determine what property was marital, and its erroneous evaluation of the New Jersey property, which unquestionably had an effect on the monetary award, make it necessary for us to vacate the monetary award. Additionally, the erroneous *de facto* transfer of ownership of jointly owned personal property to Mrs. Rogers requires a remand for a proper disposition of that property.

## B. Alimony and Counsel Fees

Our holding that the monetary award must be vacated requires us to set aside the alimony decision as well. *Prahinski v. Prahinski*, 75 Md.App. 113, 138, 540 A.2d 833 (1988). The two are interrelated and largely inseparable. Section 8–205(a)(9) provides that alimony is a factor to be considered in granting a monetary award; under § 11–106(b)(11)(ii), a monetary award is a factor to be considered in determining whether to award alimony and the duration and amount of alimony. *See also Campolattaro v. Campolattaro*, 66 Md.App. 68, 75, 502 A.2d 1068 (1986).

On the basis of the record in this case, we would set aside the denial of alimony as an abuse of discretion in any event. According to the evidence before the master when he recommended that no alimony be awarded, Mr. Rogers had secured employment and was earning in excess of $100,000 per year, with which he had to provide support for himself and the parties' minor child. There had been a brief hiatus in his employment, but his past record indicated that employment with annual earnings in excess of $100,000 was the norm for him. On the other hand, according to the evidence before the master, Mrs. Rogers was unemployed; she was a full-time student at the University of Maryland, working toward a bachelor of arts degree in economics with the hope that she would then go on to acquire an MBA degree. Early in the marriage she was employed for about nine months, doing clerical work in an office and earning about $800 per month. Then the parties moved to Maryland and she worked until her son was born. In December 1984, when Farro was 8½ years old, Mrs. Rogers again obtained a clerical job in an office, at an annual salary of $17,500. That job lasted a little over a year; she was laid off in February 1986. Unable to secure other employment, she decided to go back to school and further her education.

When the exceptions to the master's report came on for hearing in December 1988, appellant sought a brief postponement because she had examinations to prepare for and

term papers to write. Obviously, then, she was still going to school. The court refused to grant her request for a continuance, and she did not appear for the hearing. Mr. Rogers appeared, however, and after testifying that his annual salary is $115,000 plus bonuses, stated that appellant told him she had secured employment. He did not know where she was working, what type of work she was doing, whether it was full or part-time, or what she earned.

The calculation, distribution, and duration of an award of alimony is governed by statutory standards. Md. Family Law Code Ann., § 11–106 sets out factors to be considered by the trial judge in determining the appropriate duration and amount of alimony:

*(a) Court to make determination.*—(1) The court shall determine the amount of and the period for an award of alimony.

(2) The court may award alimony for a period beginning from the filing of the pleading that requests alimony.

(3) At the conclusion of the period of the award of alimony, no further alimony shall accrue.

*(b) Required considerations.*—In making the determination, the court shall consider all the factors necessary for a fair and equitable award, including:

(1) the ability of the party seeking alimony to be wholly or partly self-supporting;

(2) the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment;

(3) the standard of living that the parties established during their marriage;

(4) the duration of the marriage;

(5) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

(6) the circumstances that contributed to the estrangement of the parties;

(7) the age of each party;

(8) the physical and mental condition of each party;

(9) the ability of the party from whom alimony is sought to meet that party's needs while meeting the needs of the party seeking alimony;

(10) any agreement between the parties; and

(11) the financial needs and financial resources of each party, including:

(i) all income and assets, including property that does not produce income;

(ii) any award made under §§ 8–205 and 8–208 of this article;

(iii) the nature and amount of the financial obligations of each party; and

(iv) the right of each party to receive retirement benefits.

*(c) Award for indefinite period.*—The court may award alimony for an indefinite period, if the court finds that:

(1) due to age, illness, infirmity, or disability, the party seeking alimony cannot reasonably be expected to make substantial progress toward becoming self-supporting; or

(2) even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate.

This statute made a substantial change in the purpose and policy behind the standard to determine whether, and if so, how much alimony should be awarded. Before its enactment,

[i]t was a basic concept of alimony that a financially dependent spouse (at least one who was not at fault for the destruction of the marriage) should be able to maintain the same standard of living to which that spouse had become accustomed during the marriage, provided, of course, that the other party could afford it.

*Holston v. Holston,* 58 Md.App. 308, 321, 473 A.2d 459 (1984).

The present social policy behind an award of alimony is the need to rehabilitate the dependent spouse so she or he may become economically self-sufficient. *Holston, supra; Rosenberg v. Rosenberg*, 64 Md.App. 487, 497 A.2d 485 (1985). The economics of a division of one household into two may compel both parties to live at a lower standard of living than they had previously enjoyed. The new Family Law Statute established that the primary purpose of alimony is to be rehabilitative, instead of punitive or compensatory, *i.e.*, to enable the dependent spouse to become financially independent. This policy, however, does not relieve the economically superior and independent spouse of his or her obligation to supplement the income of the dependent spouse. When the dependent spouse reaches the limit of his or her earning capacity and is still living at an unconscionably disparate level, alimony may be awarded indefinitely in an effort to alleviate this imbalance.

Neither the chancellor nor the master gave any explanation for denying alimony. We have often said that a trial judge is presumed to know the law and apply it, *Campolattaro*, 66 Md.App. at 79, 502 A.2d 1068, but that presumption is rebuttable. *Id.* at 80, 502 A.2d 1068. Of course, the mere fact that the chancellor has failed to articulate the reasons for his decision does not prevent us from affirming that decision on appeal. In such a case, we can look to the record as a whole to garner support for the chancellor's decision. *Newman v. Newman*, 71 Md.App. 670, 678, 527 A.2d 61 (1987).

On the basis of the record in this case, however, we see no logical reason for denying alimony. Neither party was found to be at fault; the divorce was granted on the non-culpable grounds of two years separation. It would seem, therefore, that a gross disparity in income, which ordinarily translates into a gross disparity in standards of living, would be an unconscionable disparity.

Appellee has custody of and, at present, sole financial responsibility for the support of the parties' minor son.

But even giving full credence to the testimony concerning the expenses incurred in meeting that responsibility, Mr. Rogers's financial status is still far superior to that of Mrs. Rogers. His earnings are in excess of $9,000 per month; hers are a matter of pure conjecture, but she can hardly be earning, as a full-time student, more than a small fraction of appellee's salary plus bonuses. Furthermore, according to the uncontradicted evidence in this case, the highest salary appellant ever earned in this country was $17,500 per year.

In *Holston v. Holston, supra*, we held that, where it was unlikely that the wife would be able to earn a salary even approaching that of her husband after obtaining a college degree and marketable employment skills, an award of rehabilitative alimony for three years instead of indefinite alimony was an abuse of discretion. In *Holston*, the husband had earned over $86,000 in each of the previous two years, whereas the wife had last worked as a secretary at the University of Maryland Medical School, a position paying $13,000 per year at the time of trial. We concluded that if she re-entered the job market at a comparable salary her earnings would be less than 15% those of the husband, and even if she were to use the three years of alimony to return to college and earn a degree before entering the job market, there would be no reason to expect that the respective standards of living of the parties would no longer be "unconscionably disparate." The facts reflective of disparity of income in this case are remarkably similar to those in *Holston*. And here there was not even an award of rehabilitative alimony to cover the period of time during which Mrs. Rogers seeks to further her education and acquire marketable employment skills.

Much of what we have said about alimony is applicable to the denial of counsel fees. In any proceeding for alimony, alimony *pendente lite*, or modification or enforcement of an award of alimony, the court has the authority at any point in the proceeding to order either party to pay to the other an amount for the reasonable and necessary expense of

prosecuting or defending the proceeding, which includes suit money, counsel fees, and costs. § 11–110(a) and (b). Subsection (c) of § 11–110 requires the court to consider:

1. the financial resources and financial needs of both parties; and

2. whether there was substantial justification for prosecuting or defending the proceeding.

Subsection (d) authorizes the court to award reimbursement for reasonable and necessary expenses previously paid.

Alimony was very much an issue in this case, and, as we have heretofore concluded, Mrs. Rogers was justified in prosecuting a claim for alimony. Also, as we have pointed out, *supra*, Mr. Rogers has financial resources greatly exceeding those of Mrs. Rogers, and she certainly has needs that she cannot meet. The master recommended against an award of counsel fees on two bases: (1) Mrs. Rogers's indebtedness to her previous attorneys for counsel fees in the amount of $7,624.30 [4] had been discharged in bankruptcy, along with other debts, and (2) she will eventually receive half of the proceeds from the sale of the Gaithersburg property, which was found to have a net value of $100,000.

■ Although no longer legally obligated for counsel fees incurred prior to her discharge in bankruptcy, appellant has become liable for extensive counsel fees incurred since the discharge in bankruptcy. Those fees, at least, come within the purview of § 11–110. Furthermore, the court may not have taken into account the fact that it does have authority, under § 11–110(d), to order reimbursement for fees already paid. The facts that appellant borrowed the money to pay those fees and is no longer legally bound to repay those loans do not preclude the court from ordering reimbursement if it believes that reimbursement is appropriate.

---

**4.** Mrs. Rogers incurred counsel fees far in excess of that amount, most of which she had paid with money borrowed from her family.

In *Wassif v. Wassif,* 77 Md.App. 750, 765, 551 A.2d 935 (1989), we pointed out that just because marital assets are divided equally hardly means the wife is in an equal position to pay, or should be required to pay, her attorneys' fees and other costs of the divorce proceeding. Here the court, on the assumption that Mrs. Rogers would eventually receive about $50,000 from the sale of the former marital home, granted her a monetary award of $15,000. Even if she is not legally obligated to repay her family the money she borrowed, she has incurred additional debts since being discharged in bankruptcy. Obviously, the income from $65,000 will not cover those debts; the judgment rendered in this case would cause her to invade the capital to pay debts, leaving her without a home, without alimony, and with limited resources. On the facts of this case, we believe the denial of counsel fees to be an abuse of discretion. In *Wassif, supra,* we held an award of just $500 counsel fees, under less egregious circumstances (a monetary award of $83,976.50 and $500 per week alimony in addition to half the jointly owned assets) was a clear abuse of discretion.

## *Summary*

We hold that the court erred not only by failing to identify and failing properly to value marital property but also by transferring ownership of property. As a result of these errors, we must reverse the monetary award and remand the case for further proceedings relating thereto and for an appropriate disposition of jointly owned personalty. Inasmuch as the master never made adequate findings of fact as to the identity and valuation of all marital properties, another evidentiary hearing will be required.

We also reverse the denial of alimony and counsel fees, holding that those denials, on the basis of the evidence before the court, constituted abuses of discretion. Since the court will have to conduct another evidentiary hearing on the property issues, it should receive fresh evidence as to the current incomes and needs of both parties. It may even

be possible at this time to produce evidence relative to Mrs. Rogers's prospects for future earnings.

Since we remand for further proceedings, including the taking of additional testimony, it will not be necessary for us to address appellant's complaint that the denial of her request for a continuance was an abuse of discretion.

The granting of the divorce and the provisions of the judgment pertaining to custody of the parties' minor child are not challenged. We affirm those portions of the judgment.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.