486 A.2d 775

**Loveta I. WILEN**

v.

**Herbert Barry WILEN.**

**No. 475, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Jan. 11, 1985.

Arthur I. Messinger, Annapolis (Messinger & Mayer, Annapolis, on the brief), for appellant.

R. Calvert Steuart, Landover (Greenan, Walker, Steuart & Meng, Landover, on the brief), for appellee.

Argued before BISHOP, ADKINS and BLOOM, JJ.

BLOOM, Judge.

These cross-appeals present a variety of issues concerning the propriety of a decree entered by the Circuit Court for Anne Arundel County divorcing the parties *a vinculo matrimonii*, determining what constituted marital property, valuing that property, and granting the wife, Loveta Wilen, appellant, a monetary award. We shall remand these proceedings because several of the chancellor's findings were improper and amounted to an abuse of discretion.

In late 1971 or early 1972, Loveta Wilen and the appellee, Barry Wilen, began cohabiting in appellee's apartment in Suitland. At that time, Mr. Wilen was employed by Hillcrest Electronics, a family-owned business, and appellant was an assistant general manager of a Sheraton Hotel. Appellant left her job several months after she moved in with appellee. She claims she did so because Mr. Wilen

wanted her to stay at home, entertain guests, and be available for business and social engagements. She had several other hotel-related jobs during the course of her relationship with appellee but inevitably either quit or was fired because of her allegedly heavy social calendar.

In 1973, Mr. Wilen purchased a townhouse in Crofton as a residence for himself and appellant. All of the cash used to purchase that property came from Mr. Wilen's funds, and the mortgage securing the bulk of the purchase price was in his name only. The parties were married in June 1976. Shortly thereafter, Mr. Wilen sold the townhouse and applied the net proceeds of that sale, $2044, together with an additional $14,700 of his funds, to purchase a three bedroom house in Annapolis, the total cost of which was $129,900. Mrs. Wilen contributed no funds towards the purchase of the home.

Sometime after the parties began cohabiting and before they were married, Hillcrest Electronics was purchased by a wholly owned subsidiary of Peoples Drug Stores, Inc. Mr. Wilen then became an employee of that corporation. Eventually Mr. Wilen sold to his father Hillcrest Electronics stock that had been given to both parties jointly as an engagement gift.

The husband's income increased dramatically from 1971 when he was earning about $25,000 annually to 1981 when he earned about $90,000. The couple's lifestyle rose in direct relation to Mr. Wilen's salary. The two entertained often, maintained a Capital Centre "sky suite" which friends, employees and business acquaintances of appellee's frequented, and traveled extensively throughout the country and abroad. Mrs. Wilen received gifts of expensive jewelry and furs both from her husband and from her in-laws.

Mr. Wilen also became involved in a variety of real estate transactions. He was a one-third partner in several general partnerships that bought and sold Anne Arundel County real estate, including Bay Country Investments and 1000

West Partnership. He also invested in a real estate tax shelter in Flint, Michigan. He maintained an I.R.A. account and a T. Rowe Price money market fund. Mr. Wilen also owned stock in two companies, Sebar Enterprises, Inc., and Finalco, Inc., which were peripherally related to Hillcrest Electronics and Peoples Drug Stores.

Mrs. Wilen did not contribute any money towards the real estate investments, nor was she involved in any of the companies in any way. The two maintained separate "joint accounts," with Mr. Wilen putting his money into his account and Mrs. Wilen putting money she earned from her occasional employment into hers. It does not appear that Mr. Wilen ever withdrew funds from his wife's account, although he frequently deposited money into it.

In 1981, the couple began to have marital problems. Mrs. Wilen discovered that her husband was having an affair. Several squabbles resulted in physical violence between the two. Ultimately, Mr. Wilen moved out of the Annapolis home.

Mrs. Wilen then filed for divorce in May of 1981 on the grounds of adultery. A proposed consent order was drafted by her counsel, under which Mr. Wilen would provide alimony *pendente lite*, continue to make mortgage payments, and maintain the marital home. The husband signed this document and began to make payments according to its terms. Mrs. Wilen, however, never signed it.

The case was tried in August of 1983. A memorandum opinion and decree was issued on November 7, 1983, granting the wife a divorce *a vinculo matrimonii*. The chancellor determined what constituted marital property and the value of each item.

The following were found to be marital property:

| ITEM | VALUE |
|---|---|
| (1) Proceeds from stock transfer of Hillcrest Electronics from appellee to appellee's father | $ 67,000.00 |

| ITEM | VALUE |
|---|---:|
| (2) Net equity of marital home at 2729 Poplar Lane, Annapolis | $ 18,469.37 |
| (3) IRA Retirement Account | 53,294.46 |
| (4) Furnishings in marital home | 8,000.00 |
| (5) United Bank and Trust Co. stock | 1,674.00 |
| (6) Hyatt Hotel tax shelter in Flint, Michigan | 42,500.00 |
| (7) T. Rowe Price Account purchases in 1981 before separation | 12,800.00 |
| (8) Sales proceeds from property located at 20 Eastern Avenue | 42,166.66 |
| Total Value | $245,904.49 |

The following items were found to be non-marital property:

(1) Appellee's ⅓ interest in 1000 West Partnership

(2) Appellee's interest in Finalco

(3) Appellee's ½ interest in Sebar Enterprises, Inc.

(4) Appellee's interest in 18 Eastern Avenue (present residence of appellee)

(5) Appellee's ⅓ interest in Bay Country Investments except for ⅓ interest in proceeds of 20 Eastern Avenue sale

(6) Appellee's interest in Peoples Drug Stores stock

The chancellor granted the wife a monetary award equal to one-half of the marital property, or $122,952.25, but denied her any form of alimony.

Petitions to modify were filed by both parties. After a hearing thereon, the court modified its decree by reducing the total valuation of marital property to $227,435.12, which in turn reduced the wife's monetary award to $113,717.56.[1] The chancellor refused to amend his decision denying alimony to the wife.

---

1. The $18,469.37 reduction was based upon a decision that the marital home should be sold and the sale proceeds split between the parties. $18,469.37 was the figure the chancellor determined to be the net equity in the marital home.

A timely appeal and cross-appeal to this court were taken. The wife raises five issues in her appeal; the husband raises six issues in his cross-appeal:

    I.  Did the trial court err in excluding from assets to be considered marital property those assets acquired after the court determined the marriage was "factually dead"?

    II.  Did the trial court err in not awarding alimony to the Appellant/Cross-Appellee?

    III.  Did the trial court err in not dividing assets acquired while the parties cohabited prior to their marriage?

    IV.  Did the trial court err in excluding from assets to be considered marital property those shares of stock that were acquired during the marriage and the increase in value of Sebar, Inc., during the marriage?

    V.  Did the trial court err in not awarding arrearages as per the Consent Order entered into between the parties?

    VI.  Did the court err in characterizing as marital property the marital home purchased, in part, with non-marital property contributed by cross-appellant?

    VII.  Did the court err in characterizing as marital property, or in ascertaining the value of, proceeds from the sale of partnership property owned, in part, by cross-appellant, absent evidence that it was purchased subsequent to the marriage of the parties?

    VIII.  Did the court err in refusing to consider at the hearing on the motions for reconsideration and modification additional evidence proffered by cross-appellant as to the proper valuation of the partnership property?

    IX.  Did the court err in characterizing as marital property funds held in a T. Rowe Price money

market account existing during the course of the marriage, absent any evidence that it existed upon the dissolution of the marriage?

X. Did the court err in characterizing as marital property, and in ascertaining the value of, cross-appellant's interest in a hotel tax shelter, absent evidence that it was purchased subsequent to the marriage of the parties and absent sufficient evidence as to its value?

XI. Did the court err in awarding a monetary award of 50 percent of the ascertained marital property to appellant/cross-appellee, without specific analysis of those factors enumerated in § 3–6A–05(s) of the Courts and Judicial Proceedings Article?

## I. *Property Acquired After Marriage is "Factually Dead"*

█ The chancellor determined that the marriage was factually dead as of September 1, 1981. Relying on New Jersey cases such as *Painter v. Painter,* 65 N.J. 196, 320 A.2d 484 (1974), and *Brandenburg v. Brandenburg,* 167 N.J.Super. 256, 400 A.2d 823 (App.Div.1979), he concluded that property acquired after September 1, 1981, should not be considered to be marital property. In light of recent decisions of this court, that conclusion was erroneous.

*Cotter v. Cotter,* 58 Md.App. 529, 473 A.2d 970 (1984), *Gravenstine v. Gravenstine,* 58 Md.App. 158, 472 A.2d 1001 (1984), and *Dobbyn v. Dobbyn,* 57 Md.App. 662, 471 A.2d 1068 (1984), "make it clear that marital property is to be determined and valued as of the date of divorce, not the date of separation." *Cotter,* 58 Md.App. at 537, 473 A.2d 970. Thus, the chancellor's refusal to consider the substantial assets acquired between separation (September 1, 1981) and divorce (November 1983) was improper,[2] and this issue

---

**2.** In all fairness to the chancellor, we note that *Cotter, Gravenstine,* and *Dobbyn* were not decided until after his memorandum was issued.

must be remanded for further fact-finding as to acquisition of any property subsequent to the separation but prior to the divorce and valuation of all property as of the date of the divorce.

## II. *Denial of Alimony*

■ Despite noting that appellant's general financial situation was not very good and that her husband had committed adultery, the chancellor declined to award alimony to Mrs. Wilen. The refusal to grant the wife alimony was based on the fact that she failed to file a "full financial statement pursuant to Maryland Rule S 72(f)," and that "there is no way this Court can determine a proper award without a financial statement, or evidence in its stead." We believe that the refusal to award alimony on that basis was an abuse of discretion.

We note initially that the chancellor did in fact have evidence before him of appellant's needs. In her testimony, Mrs. Wilen stated the amount of her current earnings, mentioned certain recurring monthly bills, and described her need to borrow money from friends and relatives to meet these bills. She also testified that she had certain health problems which kept her from going back to work full time. Although her testimony did not mention all of the monthly expenses that should have been listed on a financial statement, it was sufficient to serve as a basis for some award of alimony.

With respect to the absence of a financial statement, we observe that Mr. Wilen had made no objection to his wife's failure to comply with Rule S 72(f). Although that rule provides that if alimony, maintenance or support is sought, a financial statement shall be attached to and considered as part of the formal pleadings, appellee did not demur or file a motion *ne recipiatur* to the bill of complaint. Nor did he

---

We also note that *Brandenburg*, upon which the chancellor relied, was reversed, in part, by the Supreme Court of New Jersey. 83 N.J. 198, 416 A.2d 327 (1980).

object to the wife's testimony at the trial concerning her current financial situation and need for support.

Rule S 72(f) provides that a financial statement shall be filed "unless an agreement thereon [concerning alimony, support, etc.] is alleged to exist." As mentioned above, a consent agreement delineating the monthly support due appellant was signed by Mr. Wilen after the divorce suit was instituted. That document, although not referred to in the pleadings, had been introduced into evidence. Mrs. Wilen was asserting its existence and validity as a basis for her claims for relief, while Mr. Wilen was disputing its validity because it had not been signed by his wife. There being evidence that both parties at one time conformed their conduct to its terms, that document, insofar as it provided for alimony, support and maintenance, might well be construed to constitute an agreement the alleged existence of which would eliminate the need to file a financial statement under Rule S 72(f).

The requirement of a financial statement (in the absence of an agreement for support) would seem to have two functions: (1) to inform the other spouse of the basis for and extent of the claim for support and (2) to furnish the court with information upon which an award of support can be made. Since the husband did not object to the absence of the statement and since the court had received evidence of the wife's needs, it was an abuse of discretion to deny alimony to a spouse on the sole basis of her failure to file a document that she had some reason to believe did not have to be filed. For that reason, we must remand for reconsideration of the issue of alimony.

III. *Assets Acquired During Premarital Cohabitation*

■ Appellant also maintains there was error in the chancellor's refusal to consider assets obtained by appellee during the five year period the couple cohabited prior to their marriage in 1976. Based upon the above quoted language from *Cotter*, as well as *Gravenstine, supra,* and *Dobbyn, supra,* we agree with the chancellor that the property

acquired before marriage does not constitute marital property.

### IV.  *Corporate Stock and Increase of Sebar, Inc.*

■   Among the assets owned by appellee prior to his marriage to appellant were 1700 shares of Peoples Drug Stores stock.  During the marriage the stock apparently split one or more times, increasing the number of appellee's shares to approximately 2300.  Appellant asserts that the 600 or so shares thus acquired by her husband during the marriage should have been considered by the chancellor as marital property.

This court's recent decision in *Mount v. Mount,* 59 Md. App. 538, 476 A.2d 1175 (1984), concerns precisely the issue raised by appellant.  In *Mount,* the husband owned stock in Greenway-Bowl, Inc., prior to his marriage but during the marriage received shares of Greenway Bowl East, a wholly owned subsidiary, as a dividend on the Greenway-Bowl, Inc., stock.  We held that the shares received as a dividend were *not* marital property under Md.Cts. & Jud.Proc.Code Ann., § 3–6A–01(e), because the divided stock was directly traceable to property owned by Mr. Mount prior to the marriage.

As in *Mount,* Mr. Wilen in the case before us received additional stock in Peoples simply because he was already a stockholder in the corporation.  Consequently, the stock is property directly traceable to property acquired before the marriage and thus is not marital property under the statute. In that respect, this case presents a different fact situation than that in *Gravenstine v. Gravenstine, supra.*  In *Gravenstine,* we determined that a chancellor's decision, that additional shares of stock purchased with dividends received from stock owned by Mr. Gravenstine prior to his marriage constituted marital property, was not clearly erroneous. The Gravenstines, unlike the Wilens, had jointly made a conscious decision to reinvest the dividends instead of using the money for household needs, recognizing that marital funds would have to be used to pay taxes on those divi-

dends.  No such decision was required of or made by the Wilens.

■  Appellant similarly argues that the increase in value in Sebar, Inc., a company of which the appellee was the salaried president, should have been considered marital property.  Mr. Wilen formed Sebar during, or slightly before, the time the parties began cohabiting.  The evidence clearly established that any increase in the value of that company during the marriage of the Wilens was directly traceable to property acquired before the marriage and is therefore not marital property.  *Mount, supra.*  Accordingly, we affirm the chancellor's findings that the stock acquired during the marriage and the increased value of Sebar were not marital property.

### V.  *Failure to Award Arrearages*

■  After Mrs. Wilen filed her original bill of complaint for divorce *a vinculo matrimonii,* her attorney drafted a proposed consent agreement for *pendente lite* support, which appellee signed.  The agreement provided for monthly alimony, appellant's continued use of appellee's company car, maid service, and mortgage payments on the marital home.  This document was not signed by appellant or presented to the court for passage as a consent order, but was introduced into evidence at the trial.

Mrs. Wilen asserts at this juncture that the chancellor erred in not ordering her husband to pay arrearages that accrued from the date of the agreement to the date of trial, in the amount of $9,932.13.  We find nothing in the record to indicate that Mrs. Wilen made any request for such arrearages in her bill of complaint or supplemental bill of complaint or by any motion or petition, not even in her petition to modify the decree.  When the alleged agreement was introduced into evidence, there was some testimony as to what Mr. Wilen had paid, what Mrs. Wilen had paid and what remained unpaid.  From such evidence, counsel for Mrs. Wilen computed an "arrearage."  The matter of al-

leged arrearages under a disputed agreement was neither properly raised nor decided below. We will not consider it here. Md.Rule 1085.

### VI. *Marital Home as Marital Property Characterization*

■ We now move on to those issues raised by appellee in his cross-appeal. The first of these issues concerns the chancellor's characterization of the couple's home on Poplar Lane as marital property. He found that the property was worth $130,000 and was subject to a mortgage lien of $111,530.63 as of the date of divorce, leaving $18,469.37 as net equity in the property. The chancellor concluded that Mrs. Wilen was entitled to 50 percent of this net equity, or $9,234.69, which he incorporated into the monetary award.[3]

Mr. Wilen argues that because the Poplar Lane home was purchased in part with funds he received from the sale of his premarital home, the entire equity in the Poplar Lane home should not be considered as marital property. More specifically, he asserts he should have been given a credit for that portion of the net equity which is attributable to his investment of non-marital funds. We agree with that argument, based upon the following language in *Harper v. Harper*, 294 Md. 54, 80, 448 A.2d 916 (1982):

[A] spouse contributing nonmarital property is entitled to an interest in the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property.... Thus, the spouse who contributed nonmarital funds, and the marital unit that contributed marital funds each receive a proportionate and fair return on their investment.

Accordingly, further fact-finding on remand is required to determine what portion of the proceeds from the sale of the property would be marital property and what portion would

---

**3.** In the modification order, it was decided that the marital home should be sold and the proceeds split between the parties, thereby decreasing appellant's monetary award by $9,234.69.

be non-marital property under the formula set forth in *Harper.*

### VII. *Bay Country Investment Property*

Mr. Wilen next challenges the chancellor's finding that the proceeds of the sale of certain property at 20 Eastern Avenue was marital property. The property had been acquired and sold, during the period of the parties' marriage, by Bay Country Investments, a partnership in which Mr. Wilen was a general partner. Mr. Wilen also disputes the chancellor's valuation of that property. We believe the chancellor erred in considering the property or its proceeds as marital property; consequently, we need not address the valuation question.

The Eastern Avenue property was one of several parcels of real estate purchased and sold by Bay Country Investments. Those properties still held by Bay Country Investments at the time of the divorce were determined to be non-marital property because they had been acquired by the partnership after the separation of the parties, that is, after the marriage was "factually dead." The partnership had purchased 20 Eastern Avenue during the marriage and had sold it prior to the separation for $126,500. Since Mr. Wilen was a one-third partner, the chancellor concluded that $42,-166.68, or one-third of the gross proceeds, was marital property.

The evidence reflected that, at the time of the trial, the partnership entity, or the individual partners on behalf of the partnership, held title to four parcels of property having a total estimated fair value of $406,000 with total outstanding liabilities of $381,999. The Eastern Avenue property had been acquired with partnership funds (presumably proceeds from the sales of other properties) for $90,000 or $100,000. The proceeds from the sale of 20 Eastern Avenue were apparently used for subsequent acquisitions.

The chancellor, as well as the parties, overlooked the fact that under the Maryland Uniform Partnership Act,

Md.Corps. & Ass'ns Code Ann. §§ 9–101 through 9–703, none of the properties owned by Bay Country Investments or any *undistributed* proceeds from the sales of properties owned by that partnership, could possibly be marital property. That act expressly provides that all property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise on the account of the partnership, is partnership property, as is any property acquired with partnership funds, unless a contrary intention appears, § 9–202(a) and (b). Although real estate may be acquired and conveyed in the partnership name, § 9–202(c), it need not be so titled in order to be partnership property. Property may be titled in the name of an individual partner, *Price v. McFee*, 196 Md. 443, 77 A.2d 11 (1950), or in the names of two or more partners, either as joint tenants or tenants in common, *Madison Nat'l Bank v. Newrath*, 261 Md. 321, 275 A.2d 495 (1971), and still be partnership property. It is the intention of the parties, not record title alone, that determines whether property not held in the name of the partnership is partnership property, *Vlamis v. De Weese*, 216 Md. 384, 140 A.2d 665 (1958). The use of partnership funds for the purchase of property, although not conclusive, is strong evidence tending to show that the partners considered the property as belonging to the partnership. Although the evidence in this case is sketchy, Mr. Wilen persistently referred to all property acquired and sold by him, his partners and Bay Country Investments as partnership property and Mrs. Wilen never challenged the characterization. The chancellor obviously concluded that the properties referred to by Mr. Wilen as "owned" by Bay Country Investments were, indeed, partnership properties and he was not clearly erroneous in so concluding. Md. Rule 1086.

Under the Maryland Uniform Partnership Act, Mr. Wilen, as a partner, has an interest in specific partnership property only as a co-owner with his partners as tenants in partnership. § 9–502(a). The incidents of that type of co-tenancy, set forth in detail in § 9–502(b), however, are such as to

preclude his interest in any specific partnership property from being considered or valued as marital property. His one-third interest in Bay Country Investments, however, consisting of his right to share in the firm's profits and surplus, which is personal property, § 9–503, may be marital property, non-marital property, or partly marital and partly non-marital property, just as shares of corporate stock might be marital or non-marital property depending, in part, upon the source of funds employed in the initial acquisition and the extent to which any increase in holdings or value may be attributable either to mere ownership of the asset or to the efforts of the party during the marriage.

### VIII. *Valuation of Partnership Property*

As a corollary to Issue VII, cross-appellant argues that the court erred in its refusal to consider additional evidence as to the proper valuation of 20 Eastern Avenue in the hearing on the Motion for Reconsideration. In light of our finding that the Eastern Avenue property was partnership property of Bay Country Investments, it is not necessary to analyze cross-appellant's contention.

### IX. *Money Market Account*

Mr. Wilen invested money in the T. Rowe Price Prime Reserve Fund in early 1981. A 1981 statement concerning activity in the account was presented to the chancellor which showed $12,800 had been invested by Mr. Wilen during that year. Mr. Wilen testified, however, that at the time of the hearing only about $500 remained in the account. This testimony was apparently uncontroverted.

The chancellor determined that the $12,800 in the account in 1981 should be viewed as marital property. As we are unsure whether the chancellor did not believe Mr. Wilen, or if he was merely using the date he determined the marriage was "factually dead" as a touchstone, we shall remand this issue for further findings of fact.[4] If, in fact, over $12,000

---

**4.** If there was only $500 in the account at the time of the divorce, then *Dobbyn v. Dobbyn* mandates that only $500 can be considered as

was withdrawn from the account, what was done with the money—whether it was reinvested, spent on the marital unit, or squandered—may be taken into account in determining the amount of the monetary award.

### X. *Hotel Tax Shelter as Marital Property*

■ In 1979, Mr. Wilen invested in a hotel tax shelter in Flint, Michigan, known as Capital Housing Partners. The $42,500 he invested in the shelter was invested as a partner in Chesapeake Investments, a Maryland partnership. Accordingly, our analysis in issue VII in finding that partnership property cannot be considered as marital property applies. Appellant's partnership interest in Capital Housing Partners at the time of the divorce, not his interest in specific partnership assets, constituted marital property.

### XI. *Award of 50 Percent of Marital Property to Appellant*

The final issue before this court concerns the propriety of the chancellor's determination that Mrs. Wilen should receive fifty percent of that amount deemed marital property as her monetary award. Since we must reverse the decree for error in determining what property is marital property and the value of marital property, the monetary award must also be set aside. In remanding the case for reconsideration of the monetary award in conjunction with the other issues to be redetermined, we deem it appropriate to make the following observations:

■ A. Determining and valuing marital property as of the time of divorce rather than the time of separation will not necessarily lead to an inequitable result. The extent to

---

marital property. In *Dobbyn,* we held that investment assets should be valued as of the date of the absolute divorce of the parties or the date of the liquidation of the assets if liquidation occurred during the marriage.

which the efforts of one spouse may have led to acquisition of property or an increase in its value without any monetary or non-monetary contribution by the other spouse after the parties separated can, and should, be taken into account in determining what would constitute an equitable monetary award.

B.  It is not necessary, and perhaps not even desirable, for the chancellor to make (or state) a monetary award in terms of a specified percentage of the marital property. All that is required of the chancellor is that he (1) determine what property is marital property; (2) determine the value of the marital property; and (3) determine what sum of money, if any, should be awarded to one spouse or the other as an equitable adjustment.  In making the latter determination, of course, the chancellor is obliged to consider all of the criteria set forth in Md.Family Law Code Ann. § 8–205 (formerly Md.Cts. & Jud.Proc.Code Ann. § 3–6A–05).  How much weight should be given to each factor in each case is a matter entirely within the chancellor's sound discretion.

*Summary*

Neither party asserted any error in the grant of the divorce to Mrs. Wilen or in the award to her of certain attorney's fees and court costs (including detective's bill). Those portions of the decree, being amply supported by the evidence, will be affirmed.  The monetary award and denial of alimony, which we have concluded were based upon erroneous considerations, will be reversed and the case will be remanded for reconsideration and redetermination of those matters.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY EACH PARTY.