538 A.2d 1193

**Kristina A. McNAUGHTON**

v.

**William Bruce McNAUGHTON.**

**No. 188, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

April 5, 1988.

Alan Meiselman (Haspel & Meiselman, Chartered, Neal J. Meiselman, Linda Haspel, Rockville and Alan D. Massengill, Gaithersburg, on brief), for appellant.

Dennis M. Ettlin (Jackson & Campbell, P.C., on brief), Rockville, for appellee.

Argued before GILBERT, C.J., and GARRITY and POLLITT, JJ.

GARRITY, Judge.

In this matter, we shall focus our attention primarily on the method of determining valuation of marital shares of stock in a closely held corporation. We shall also discuss whether the appreciation of non-marital stock in such a corporation may be considered a marital asset where the

appreciation may be due to the efforts of the owner spouse during the marriage.

## Facts

Kristina A. McNaughton, the appellant, and William Bruce McNaughton, the appellee, were married in 1967 and granted a divorce twenty years later by the Circuit Court for Montgomery County (Beard, J.) on the grounds of a two-year separation. Shortly after being married in Bethesda, the parties moved to Belgium for two years during Mr. McNaughton's tour of duty in the armed forces. Upon their return to the United States in 1970, Mr. McNaughton started working in his father's family businesses, two closely held corporations, G.D. Armstrong Co. Inc. (GDACo, a gas jobber dealing in petroleum products) and Armstrong Tire & Accessory Corp. (ATACo). At about the same time appellant gave birth to their first child, Lyle McNaughton.

In 1971 the parties purchased the marital home, in part with money given to them by the appellee's parents. In 1972, Mrs. McNaughton gave birth to their second child, Heather.

While Mrs. McNaughton assumed the role of a homemaker in nurturing the children and tending to the needs of the family, Bruce McNaughton continued to work in his family's businesses. Since 1974, he has assumed various positions as an officer in both corporations.

In 1980, the McNaughtons began having marital difficulties. The factors leading to the breakdown of the marriage were highly disputed. On November 9, 1983, Mrs. McNaughton moved out of the marital home with the children. She then resumed employment, freelanced as a commercial designer, and pursued a bachelor's degree in art. The chancellor found that at the time of the divorce Mrs. McNaughton was earning approximately $3,600 annually and Mr. McNaughton $31,000.

The chancellor determined the value of the marital property to be $198,721. He granted a monetary award to Mrs.

McNaughton in the amount of $60,000 in addition to awarding her alimony of $200 a month for 36 months and attorney fees and costs in the amount of $12,000. The chancellor further awarded joint custody of the children to the parties, allowed Mrs. McNaughton use and possession of the family home for a period of three years, and provided $150 per month for the support of Heather McNaughton who was to reside with her mother.

Mrs. McNaughton presents the following issues, which we have reworded, for our determination.[1]

I.    Whether the chancellor erred in failing to consider the appreciated value of corporate assets when determining the value of jointly owned shares in a closely held corporation.

II.   Whether the appreciation in value of non-marital stock held in a close corporation should be considered a marital asset where the increased value may have been due to the personal efforts of the owner spouse during the marriage.

III.  Whether certain representations by the husband as to the nature, value and acquisition costs of a significant marital asset, constituted fraud.

IV.   Whether the chancellor abused his discretion in limiting attorney fees and denying the award of suit expenses to the appellant for certain expert witnesses.

Mr. McNaughton has filed a cross-appeal and requests our review of the following issue:

Whether the granting of a monetary award in addition to the awards of alimony, counsel fees, suit money and costs, principal, interest, taxes and insurance during cross-appellee's use and possession of the marital home and contents therein was an abuse of discretion by the trial court.

---

1.  Additionally, Mrs. McNaughton submitted a motion to strike the appendix to Mr. McNaughton's brief. We shall grant the motion as the appendix contained material which was not part of the record.

## I.  *Valuation of Stock*

Mrs. McNaughton argues that the chancellor erred in relying on the testimony of Dr. David A. Walker who had been qualified to testify on behalf of the appellee as an expert in the area of the valuation of stock in closely held corporations.  She bases this contention on the fact that the valuation approach utilized by Dr. Walker in determining the value of the minority shares of the two companies, G.D. Armstrong Co. Inc. and Armstrong Tire and Accessory Corp., was erroneous as it considered only the book value of the real estate owned by each corporation instead of its fair market value.

Rather than consider the current value of assets owned by the corporations, Dr. Walker testified that he based his analysis on balance sheets and income statements, recent stock sale transactions between unrelated individuals, dividend declarations, and industry competition within the Washington area.

In assessing the specific value of the minority shares in the closely held corporations, Dr. Walker testified that he also considered factors generally recognized by the Internal Revenue Service in valuing corporate stock.  These factors, as reflected in Rev.Ruling 59–60, require an appraiser to weigh all factors in arriving at market value including the nature of the business, the economic outlook in general, the book value of the stock and the financial condition of the business, the earning capacity of the company, the good will of the enterprise, and the size of the block of stock to be valued.  As the shares in question were minority shares which lacked control and had no ready market for exchange, Dr. Walker discounted each share price to 40% of its book value.  Dr. Walker opined that the fair market value of the minority shares of G.D. Armstrong Company was $58.50, and that the value of the Armstrong Tire and accessories stock was $24.84 per share.

Mrs. McNaughton's expert, Mr. John Canto, a certified public accountant, dismissed the earnings approach used by

Dr. Walker as "totally useless because it is dictated by the owners of the company who control salaries, bonuses, dividends and retained earnings." Mr. Canto further rejected the book value method "because it fails to recognize the fair market value of real estate and leases." [2] Mr. Canto further stated that the practice of discounting the value of minority shares was inappropriate. Mr. Canto based his appraisal on an examination of the books and records of the corporations, appraisal of the assets, including that of the real estate, review of the corporate tax returns and audited financial statements, and analyses of the leases held, depreciation schedules, and various filings that the corporations had made with governmental agencies. Mr. Canto valued the stock of GDACo at $445 per share and the ATACo. stock at $180 per share.

> In his memorandum opinion, the chancellor stated:
>
> Having reviewed the record and particularly the fact that these are two *very* closely held corporations (GDACo and ATACo), it is the finding of this Court that the value of the stock, for purposes of the marital property determination, is Seventy–Five Dollars ($75.00) and Thirty–Seven Dollars ($37.00) per share, respectively.

It is evident, as the chancellor recognized, that the task of appraisal is not aided by an exact science. It is equally clear that the chancellor placed great reliance upon the testimony of the appellee's expert witness who failed to consider the appreciated value of corporate real estate holdings when valuing the current worth of the corporate shares.

---

**2.** Mr. Canto relied on an appraisal that the current fair market value of G.D. Armstrong, Inc.'s real estate and leases amounted to $1,596,-000, and that the fair market value of the real estate holdings of Armstrong Tire and Accessory, Inc., amounted to $383,500. Dr. Walter testified that in valuing the corporate shares, he included the cost of the real estate, minus depreciation *to arrive at the book value.* He testified that, *"I didn't value the assets in any way."* (Emphasis added).

The opinion of the chancellor reflects his reasoning for not considering the appreciation of corporate assets as marital property. He stated, in pertinent part:

Hence, in the absence of some clear indication by Maryland appellate courts, this Court is not persuaded by the foreign authorities cited by Defendant that it is or should be the law of Maryland that, on these facts, the appreciation in the corporate assets and stock should be marital property.

■ Although the example set forth in *Schweizer v. Schweizer*, 301 Md. 626, 484 A.2d 267 (1984), dealt with the appreciation of real property purchased by a husband and wife, we believe that the principle is equally applicable to the appreciated value of a marital corporate share of stock which has increased due to appreciation of the corporate assets. Writing on behalf of the Court, Chief Judge Murphy reiterated the principles enunciated in *Grant v. Zich*, 300 Md. 256, 477 A.2d 1163 (1984), and *Harper v. Harper*, 294 Md. 54, 448 A.2d 916 (1982):

We illustrated the proper application of these principles with this example:

A husband and wife acquired real property for a purchase price of $40,000. The wife contributed a down payment of $10,000 from property that she acquired prior to marriage. The remaining $30,000 was financed by a mortgage signed by both the husband and the wife. One-quarter of the value of the property is the wife's nonmarital property and three-quarters of the value of the property is marital property.

If, at the time of dissolution of the marriage, the property has appreciated in value to a fair market value of $60,000 and the mortgage indebtedness has been reduced to $20,000 by the payment of $10,000 of marital funds, the following division would be appropriate. One-quarter of the $60,000 fair market value of the property, or $15,000, would be the wife's nonmarital property, not subject to equitable distribution. From the remaining $45,000, $20,000, representing the unpaid

mortgage balance, would be deducted leaving $25,000 as the net value of the marital property subject to equitable distribution.

*Id.* 300 Md. at 276–77, 477 A.2d 163.

As the chancellor failed, when determining the value of the marital stock, to take into consideration the fair market value of the corporate assets from the time the stock became marital property until the time of the issuance of the decree of divorce, we must remand for his reconsideration of value.[3] *See Dobbyn v. Dobbyn,* 57 Md.App. 662, 471 A.2d 1068 (1984).

## II. *Increase in Value of Non-Marital Assets*

Marital property under Md. Family Law Code Ann. § 8–201 of the Marital Property Act, is defined as:

(e) *Marital property.*—(1) "Marital property" means the property, however titled, acquired by 1 or both parties during the marriage.

(2) "Marital property" does not include property:

(i) acquired before the marriage;

(ii) acquired by inheritance or gift from a third party;

(iii) excluded by valid agreement; or

(iv) directly traceable to any of these sources.

At trial, Mrs. McNaughton contended that the definition of marital property should include not only the stock acquired by the parties during the marriage but also any increase of value of all non-marital stock Mr. McNaughton had acquired by gift from his parents both before and during the marriage. She bases her contention on the theory that her non-monetary contribution allowed Mr. McNaughton to increase the work efforts he expended during their marriage.

---

**3.** Due to our holding in Section I, we do not reach an issue which had been submitted by the appellant that the chancellor abused his discretion in refusing to grant a continuance for the purpose of examining a substitute expert witness prior to trial.

The chancellor made the following determination of facts pertinent to our discussion:

> At various times both prior to and during the marriage of the parties, the elder McNaughtons, both jointly and individually, gave gifts of stock in these corporations to the Plaintiff (Mr. McNaughton) and Defendant (Mrs. McNaughton), both jointly and individually.
>
> The efforts of the entire McNaughton family have made GDACo and ATACo prosperous businesses. Indeed the Plaintiff's employment, along with that of his father and mother, have contributed to the appreciation of the corporations' assets and stock. Substantial time and effort were expended in this case by the Defendant's attempt to prove, and the Plaintiff's corresponding attempt to disprove, that the increase in the corporations' net worth was marital property.
>
> The Court finds that the Plaintiff has never owned anything more than a minority interest in either GDACo or ATACo. At all times during the marriage, the Plaintiff always received a fair and reasonable salary, full benefits and profit sharing as compensation for his work for these corporations. As a stockholder, the Plaintiff, along with all other stockholders, always received dividends whenever they were declared. It is readily apparent that the plaintiff was just one of many people whose work, along with a variety of other factors beyond the control of the Plaintiff and his family, contributed to the appreciation and increase in value of these business enterprises.

The chancellor thereupon determined that on the basis of the facts and circumstances presented to him, the appreciation of the gifts of corporate stock should not be considered marital property. We agree, and explain.

Mr. John McNaughton testified that he had purchased the controlling interest in the G.D. Armstrong Co. in 1953. Mr. McNaughton testified that he had subsequently acquired the Armstrong Tire and Accessory Co. and had developed five locations in the State of Maryland and employed ap-

proximately 75 people. In 1975, however, when the gasoline shortage started, the tire business depreciated to such an extent that he was forced to consolidate into one location. Mr. McNaughton named numerous employees whom he considered assets to the corporation and who worked for him on an average of 15 years. The major assets of the corporations were and are its real estate acquisitions. The great majority of these interests had been acquired prior to Bruce McNaughton's employment, and all had been acquired under the leadership of John McNaughton. Additionally, much of the corporate growth and increase in the value of corporate assets in stock was attributable to the unprecedented inflation between 1973 and 1974, the oil embargo of 1974, and the energy crisis of 1979.

In *Wilen v. Wilen*, 61 Md.App. 337, 486 A.2d 775 (1985), we recognized the distinction between increases in value attributable to passive ownership and increases resulting from the active efforts of a party to the marriage for the purpose of determining the overall value of marital property. In harmony with the chancellor's finding in the case at bar, we would classify the substantial majority of stock value appreciation to passive factors. We also agree that evidence supported the chancellor's finding that Bruce McNaughton's efforts, along with that of his father and brother, and many valued employees over the years, contributed to the appreciation of these on-going concerns.

In *Schweizer v. Schweizer*, 55 Md.App. 373, 462 A.2d 562 (1983), *aff'd and remanded*, 301 Md. 626, 484 A.2d 267 (1984). Mrs. Schweizer challenged the chancellor's determination that approximately 25,000 shares in the Rouse Co. titled in her husband's name were non-marital assets. She argued that as a result of her husband's participation in the management of that corporation during their marriage, the stock appreciated in value.

We rejected Mrs. Schweizer's argument on the ground that the extent to which shares acquired before marriage increased in value due to Mr. Schweizer's position on the Board was "too tenuous and speculative to consider." We

further observed that the *quid pro quo* for his contributions came in the form of directors' fees which were used for marital expenditures. In the case at bar, dividends were distributed to the shareholders from time to time whenever natural market forces would allow. These funds would be used for family purposes. Indeed, the chancellor found that Bruce McNaughton was earning a fair salary and that he had not fraudulently hidden corporate assets.

The Court of Appeals was faced with a converse situation in *Brodak v. Brodak,* 294 Md. 10, 447 A.2d 847 (1982). In *Brodak,* the husband had received a trailer park from his parents. While the husband was the sole proprietor, the wife worked in the park. Through their joint efforts, three trailers were added to the park during their marriage. The Court held that the additional trailers were marital property, stating that the funds to purchase the trailers were "partly generated through the efforts of the wife and thus cannot be said to be directly traceable to the gift." In *Gravenstine v. Gravenstine,* 58 Md.App. 158, 472 A.2d 1001 (1984), as the parties had jointly made a conscious decision to re-invest the dividends received from non-marital stock instead of using the money for household needs, we determined that the new stock was marital property.

In *Wilen v. Wilen,* 61 Md.App. 337, 486 A.2d 775 (1985), and *Mount v. Mount,* 59 Md.App. 538, 476 A.2d 1175 (1984), we held that any increase in the value of non-marital assets that were directly traceable to those assets remained non-marital. In *Wilen, supra,* the husband acquired before marriage half of the stock in another company of which he was president. As the evidence clearly established that any increase in the value of that company during the marriage of the Wilens was directly traceable to the property which had been acquired before the marriage, we affirmed the chancellor's findings that such property was non-marital. Likewise, in *Mount, supra,* we held that shares which had been received as a dividend were not marital property as they were directly traceable to shares which had been owned by Mr. Mount prior to the marriage. We further

observed that rather than contributing in any way towards the acquisition of the additional stock, the shares were received simply because Mr. Mount had been a stockholder in the corporation.

In *Rosenberg v. Rosenberg*, 64 Md.App. 487, 497 A.2d 485 (1985), Mrs. Rosenberg argued, as cross-appellant, that because of her husband's efforts expended during the marriage, the theory of continuing acquisitions should be applied to any increase in the value of her husband's inherited interest in four trusts valued at approximately $24,000,000. Hence, Mr. Rosenberg's interest in that increased value should have been included as marital property, although admittedly non-marital property at its inception. Mrs. Rosenberg further averred that the facts established at trial indicated that there was a joint venture by the family, and, therefore, each was the agent for the other and an increase for one was an increase for all.

We upheld the chancellor's finding that there was no evidence produced from which the court could find Mr. Rosenberg's personal efforts at Crown or as a member of the Board of Directors of the American Trading and Production Corporation, either directly or indirectly, contributed to the increase in value of Mr. Rosenberg's interest in the trust.

■ In the case at bar, the chancellor found that Bruce McNaughton had, along with his father and brother, contributed to the appreciation of the corporation's assets in stock. As in *Rosenberg*, however, no evidence was presented from which the chancellor could form any basis, other than speculation, as to what proportion, if any, of the increase in the initial non-marital shares was attributable to Bruce McNaughton's work as an officer and employee in the corporation. Because of the history of these family concerns, including the fact that the majority of assets were purchased prior to Bruce McNaughton's entrance onto the scene, as well as other factors beyond his control, such as inflation, we believe Mrs. McNaughton's suggestion that

her husband had contributed to one-third of any increase in value, to be totally arbitrary and speculative. Under the facts presented to him, we believe the chancellor's ruling that Mrs. McNaughton was not entitled to any increase in the value of "non-marital" shares of the corporations, was proper.

## III. *Fraudulent Inducement*

Appellant also maintained at trial that a 1977 stock purchase agreement between appellee and his parents, rescinded in February of 1982, was a valuable marital asset. Appellant claimed that she relinquished her rights in the stock purchase agreement because of the fraud and connivance of her husband. Appellee disputed these contentions and testified that the agreement was cancelled at appellant's insistence.

In determining the credibility of the witnesses and the weight to be attached to this conflicting testimony, the court considered appellant's prior inconsistent statements regarding the stock purchase agreement as well as other portions of appellant's testimony which were contradicted by oral and documentary evidence in the case. See generally *Voss v. City of Baltimore*, 246 Md. 345, 228 A.2d 295 (1967).

In a prior declaratory judgment action, appellant affirmed under oath that the stock purchase agreement was part of a plan "concocted" by John M. McNaughton, his wife and two sons. In testimony taken by deposition in the prior case, appellant claimed to have been "hooked" into the agreement; it was something she never signed, never agreed to, and that any stock certificate issued pursuant to that agreement was invalid.

In the trial of the instant case, the appellant maintained she had no knowledge of the alleged asset prior to its cancellation in 1982. This testimony was contradicted by the 1980 and 1981 federal income tax returns, however,

which had been signed by both parties after claiming the interest paid on the agreement as a deduction.

■ Based on the facts in the record before us, we hold that the evidence was sufficient to allow the chancellor to determine that the appellant was not fraudulently induced into signing the agreement which relinquished her rights in the stock purchase agreement.

## IV. *Attorney Fees and Costs*

The appellant argues that the chancellor erred in limiting her recovery of attorney fees and in not awarding suit money for expert witness fees in accordance with our holding in *Rosenberg v. Rosenberg,* 64 Md.App. 487, 497 A.2d 485 (1985). After considering the entire record of documentary evidence and testimony with respect to the financial needs and resources of the parties, the chancellor awarded appellant "fees and costs" in the amount of twelve thousand dollars ($12,000).

The amount of attorney fees and related costs is a matter left to the sound discretion of the chancellor. Absent a clear abuse of the exercise of discretion, we may not set the award aside. *Duskin v. Duskin,* 51 Md.App. 451, 443 A.2d 1010 (1982); *Sody v. Sody,* 32 Md.App. 644, 363 A.2d 568 (1976).

This matter, as our opinion reflects, was most acrimonious and needlessly protracted. Even in the preliminary stages of the suit, an on-going dispute erupted over discovery, with each party contending that the other was obstructing or delaying the process. As an example, the docket shows numerous requests for production of documents—one of which contained over 66 categories. As a result, Mr. McNaughton sought a protective order. During the course of discovery, Mrs. McNaughton filed a parallel declaratory judgment suit jointly with Sarah H. McNaughton, her husband's sister-in-law, in order to determine the

stock ownership of all parties involved. At another juncture in this extended suit, the appellant filed an obviously unsuccessful motion to consolidate Sarah McNaughton's divorce case with that of her own.

As to the refusal of the chancellor to award the appellant expert witness fees, the appellant avers that our holding in *Rosenberg, supra,* entitled her to such costs. In *Rosenberg* we held that attorney fees and related litigation costs were properly awarded where the fees were incurred in litigating whether the appreciation of non-marital stock was, in fact, marital property. Although we held that the appreciation in that instance was not marital stock, the court noted that it would have been negligence on the attorney's part not to have pursued the matter. *Id.* 64 Md.App. at 510, 497 A.2d 485. In the case at bar, however, the chancellor correctly pointed out that the holding in *Rosenberg* was not controlling as the determination of title to stock was distinctly different from that of determining whether appreciation of stock was marital property.

■ Although it is clear that the chancellor had authority to award the appellant an additional amount towards attorney fees as well as suit expenses to cover appraisal costs, under the facts and circumstances of this case, we are unable to conclude that the chancellor abused his discretion in limiting the award of attorney fees and in not allowing the award of additional suit expenses.

## V.   *Monetary Award*

Lastly, we shall address the issue of the monetary award raised by Bruce McNaughton in his cross-appeal.

The chancellor believed that he had overstated the marital assets in the amount of $75,000. The chancellor thereupon amended his order and reduced the value of the marital assets by that amount. At the same time, however, the

chancellor granted cross-appellee Kristina McNaughton a monetary award in the amount of $60,000. This amount was in addition to an award of alimony for thirty-six months, counsel fees, exclusive use of the family home and personal property therein for eighteen months, and an order directing payment of the principal, interest, taxes and insurance for the family home be made by Bruce McNaughton.

Mr. McNaughton avers that the monetary award of $60,-000 to Mrs. McNaughton was clearly inequitable. He argues that the conclusion is inescapable that the chancellor failed to consider the combined effect "of all other awards for determining the necessity for an amount of a monetary award."

In determining the amount of the monetary award, the chancellor stated:

> In the case *sub judice*, Defendant's counsel also pursued the theory that the appreciation in the Armstrong Companies' stocks was marital property. While this Court actually found to the contrary, the Court has taken into account, as defense counsel suggested, the value of these stocks when determining a monetary award.

As we have held that, by not considering the fair market value of corporate assets, the chancellor erred in using an improper standard to determine the actual appreciated value of the marital stock owned at the time of the divorce, the chancellor must reconsider the determination of such value from the evidence which had been presented at trial. His decision will then determine whether any change in the monetary award, which he believed reflected an appreciated amount, will be appropriate. *See Dobbyn, supra.*

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.